**BURLINGTON NORTHERN, INC., Appellant,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a corporation, Appellee.**

**No. 80–1629.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1981.

Decided May 15, 1981.

Rehearing and Rehearing En Banc Denied June 16, 1981.

Frank S. Farrell, James R. Walker, Leah Manning Stetzner, St. Paul, Minn., Charles H. White, Jr. argued, Steven A. Lauer, Washington, D.C., for Burlington Northern Inc.

Edward M. Glennon, Kurtis A. Greenley, Lindquist & Vennum, Minneapolis, Minn., for appellee; Verner, Liipfert, Bernhard & McPherson, L. John Osborn, argued, Chicago, Ill., of counsel.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

LAY, Chief Judge.

On January 9, 1976, the Interstate Commerce Commission authorized Burlington Northern, Inc. (BN) and Chicago & North Western Transportation Company(CNW) to construct and operate a joint rail line in the Powder River Basin, Wyoming.[1] BN substantially paid for the line and now operates unit coal trains over it. CNW has not operated trains over the line.

Beginning in 1975, BN and CNW executed a series of three Joint Line Agreements that purport to govern the rights and obligations of the railroads in construction, operation, and ownership of the joint line. On June 13, 1979, CNW applied to the Commission for its approval of these agreements. The agreements provided that if

---

1. In the January 9, 1976 decision, the Commission expressly reserved jurisdiction over construction of the joint line "for the purpose of making such further conditions" regarding financial and other arrangements between the applicants as might be required in the public interest. *Burlington Northern, Inc.—Constr. & Oper.*, 348 I.C.C. 388, 402 (1976). Because of a pending appeal by the Sierra Club, which was eventually dismissed, the order did not become final until May 8, 1978.

CNW had not paid its equal share of the construction costs by November 30, 1979, CNW would be deemed to have withdrawn from the agreement. CNW failed to pay on time. On November 30, 1979, the Commission issued an order asserting that it had jurisdiction over the agreements and the operation of the line, without regard to CNW's alleged default.[2]

The present appeal relates to an action filed by BN seeking a declaratory judgment in state court that CNW had breached its contract obligation and seeking to determine the effect of CNW's alleged default. CNW removed to the district court alleging a federal question.[3] The district court determined that the Commission had primary jurisdiction over the agreements and dismissed the case. *Burlington Northern, Inc. v. Chicago & North Western Transporta-tion, Co.*, 495 F.Supp. 109, 110–11 (D.Minn. 1980). We affirm the dismissal.

BN argues that CNW's default on November 30, 1979, raises only a breach of contract issue which breach allegedly (1) cancels the joint line agreements, (2) deprives the Commission of any jurisdiction it might have had over the agreements, and (3) entitles BN to a declaration that CNW has no rights under the agreements. Additionally, BN argues that, irrespective of CNW's default, (4) the Commission has no statutory authority to settle contract disputes and, therefore, lacks authority to modify or extend the joint line agreement, (5) this case presents issues not within the primary jurisdiction of the Commission and (6) the district court erred in failing to remand the matter to the Minnesota state court.[4]

**2.** The Commission stated:

Our 1976 decision in Finance Docket No. 27579 only authorized the *joint* construction and operation of the plan in question. (emphasis original). Parties cannot, solely by the terms of their private agreements and *without Commission approval*, convert such authorized joint construction and operation into single carrier construction and operation. Any purported effect of such a private agreement would, in our view, have no legal significance.

*Application for Approval of the Terms of Construction, Ownership, and Operation of a Line*, I.C.C. Finance Docket No. 29066F, slip. op. at 5 (Nov. 30, 1979) (emphasis supplied).

In short, C&NW's right to participate in the new line on *terms conforming to the public interest will continue, regardless* of whether or not it meets the November 30 deadline (in the parties' private, but as yet, unapproved agreement) for payment of its share of the construction costs, unless and until we determine, on the basis of all the facts developed in the pending proceeding on C&NW's June 13, 1979 petition that such participation is no longer required by the public convenience and necessity.

*Id.* at 6 (emphasis supplied).

The Commission added it was reasserting jurisdiction over:

[E]very provision of the agreements, *including the provision forfeiting C&NW's interest in the new line if it does not pay its share of the construction costs by November 30.* That provision, like any other, is subject to disapproval or modification if we find the public interest so requires.

*Id.* (emphasis supplied).

Our November 30 decision discussed in detail whether the terms of the contract between BN and C&NW could preclude C&NW from participating in the joint venture we had approved. We *concluded that it could not.* We reiterate that in the absence of a complete record, it would be inappropriate to determine what are the requirements of justice and the public interest or to modify the terms of the parties' agreements.

*Chicago & N.W. Transp. Co.—Constr. & Oper.*, I.C.C. Finance Docket No. 28934, slip op. at 3 (Mar. 17, 1980) (emphasis supplied).

**3.** BN moved to remand the matter back to the state court arguing that the pure contract issue was completely within the state court's common law jurisdiction. The district court denied BN's motion. The district court's refusal to remand the case is reviewable here on appeal from the order dismissing the complaint. *Rosecrans v. William S. Lozier, Inc.*, 142 F.2d 118 (8th Cir. 1944). *Accord, Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 663 (7th Cir. 1976).

**4.** We find no error in the refusal to remand. The complaint asserts a federal question within the meaning of 28 U.S.C. §§ 1331, 1337, and 1441.

In a memorandum opinion and order dated December 28, 1979, the district court (Devitt, J.) denied BN's motion to remand the case to the Minnesota state court, finding that the complaint disclosed "a need for determining the power and responsibilities of the Interstate Commerce Commission to approve and modify the agreement at issue." Civ. No. 4–79–605, slip op. at 3–4 (D.Minn. Dec. 28, 1979).

█ The ICC has primary authority to determine its own jurisdiction. The Commission's decision of November 30, 1979, asserts that the issue of whether CNW can participate in the operation of the joint line is cognizable in its proceedings in the first instance by virtue of 49 U.S.C. §§ 10901 and 11343.[5] BN admits that the Commission has jurisdiction over initial construction of a joint line and over abandonment of a joint line,[6] but asserts the Commission has no jurisdiction during the interim between these events. We need not reach, and we express no opinion herein, as to whether Congress intended the Commission to be without jurisdiction over the joint line agreements.[7] The Commission's assertion of jurisdiction can be challenged on appeal after the Commission has reached a final decision in its pending proceedings. *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). A determination of the Commission's jurisdiction is unnecessary now because the Commission's decision may moot the very issue BN seeks to adjudicate. Uniformity and consistency in the regulation of railroads will be secured, and the limited functions of the courts in this business more rationally exercised, if we defer to the Commission's proceedings pending a final decision. *Far Eastern Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–495, 96 L.Ed. 576 (1952). The soundness of this conclusion is buttressed by the fact that the Commission has played a vital role in the initiation of this joint line, as well as in the development of the transportation of coal from the Powder River Basin, which roles make the Commission's views of particular benefit to the courts where ultimately the validity of any arrangement will be tested. *See generally Marine Terminal Association v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68–69, 91 S.Ct. 203, 208–209, 27 L.Ed.2d 203 (1970); *Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 421, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965).

█ As a general rule, judicial interference should be withheld until the administrative process has run its course.[8] *Myers*

---

**5.** 49 U.S.C. § 10901 provides in pertinent part:
(a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter 1 of chapter 105 of this title may—
(1) construct an extension to any of its railroad lines;
(2) construct an additional railroad line;
(3) acquire or operate an extended or additional railroad line; or
(4) provide transportation over, or by means of, an extended or additional railroad line; only if the Commission finds that the present or future public convenience and necessity require or will be enhanced by the construction or acquisition (or both) and operation of the railroad line.
(c)(1) If the Commission—
(A) finds public convenience and necessity, it may—
(i) approve the application as filed; or
(ii) approve the application with modifications and require compliance with conditions the Commission finds necessary in the public interest; or
(B) fails to find public convenience and necessity, it may deny the application.
(2) On approval, the Commission shall issue to the rail carrier a certificate describing the construction or acquisition (or both) and operation approved by the Commission.
49 U.S.C. § 11343 provides in pertinent part:

(a) The following transactions involving carriers providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I (except a pipeline carrier), II, or III of chapter 105 of this title may be carried out only with the approval and authorization of the Commission:
(6) acquisition by rail carrier of trackage rights over, or joint ownership in or joint use of, a railroad line (and terminals incidental to it) owned or operated by another rail carrier.

**6.** *Thompson v. Texas Mexican Ry.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946).

**7.** Our affirmance of the district court's dismissal should not be construed as affirming any findings by the district court regarding the correctness of the Commission's exercise of jurisdiction over the joint line agreements. On appeal of the Commission's final decision, BN shall have the opportunity to contest the Commission's exercise of jurisdiction over the joint line agreements without regard to the district court's findings.

**8.** The United States Court of Appeals for the District of Columbia Circuit has rejected two separate attempts by BN to overturn the Commission's interlocutory rulings asserting jurisdiction over the Joint Line Agreements and

*v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). It follows that declaratory actions should not be used to circumvent administrative procedures. *Bentex Pharmaceuticals*, 412 U.S. at 652–53, 93 S.Ct. at 2493–2494; *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 647, 92 S.Ct. 1827, 1842, 32 L.Ed.2d 369 (1972); *Whitney National Bank*, 379 U.S. at 417–18, 422, 85 S.Ct. at 556, 558. In *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), Justice Jackson stated:

> [t]he declaratory judgment procedure will not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review. It would not be tolerable, for example, that declaratory judgments establish that an enterprise is not in interstate commerce in order to forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or many agencies that are authorized to try and decide such an issue in the first instance. *Cf. Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638]; *Eccles v. Peoples Bank*, 333 U.S. 426 [68 S.Ct. 641, 92 L.Ed. 784]. *See Colegrove v. Green*, 328 U.S. 549 [66 S.Ct. 1198, 90 L.Ed. 1432]. Responsibility for effective functioning of the administrative process cannot be thus transferred from the bodies in which Congress has placed it to the courts.

*Id.* at 246–47, 73 S.Ct. at 241–242.

In *FPC v. Louisiana Power & Light Co.*, 406 U.S. at 647, 92 S.Ct. at 1842, the Supreme Court dismissed an action for injunctive relief because a proceeding was pending before the FPC, notwithstanding the utility's contention that the Commission lacked jurisdiction. Justice Douglas stated:

> The FPC had exercised its primary jurisdiction and was conducting proceedings to determine whether the Green System was subject to its jurisdiction. In that circumstance, the District Court and the Court of Appeals were obliged to defer to the FPC for the initial determination of its jurisdiction. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638] (1938). The need to protect the primary authority of an agency to determine its own jurisdiction "is obviously greatest when the precise issue brought before a court is in the process of litigation through procedures originating in the [agency]. While the [agency's] decision is not the last word, it must assuredly be the first." *Marine Engineers Beneficial Assn. v. Interlake S. S. Co.*, 370 U.S. 173, 185 [82 S.Ct. 1237, 1243, 8 L.Ed.2d 418] (1962). Review of the FPC decision may proceed in due course. . . .

406 U.S. at 647, 92 S.Ct. at 1842.

The district court's order dismissing the plaintiff's complaint is affirmed.

---

thereby prevent the Commission from conducting hearings in Finance Docket No. 29066 and related cases. By order entered February 25, 1980, in No. 79–2434, *Burlington Northern, Inc. v. ICC*, the D.C. Circuit denied BN's motion for a stay of the administrative hearings and dismissed its petition for review of the Commission's November 30, 1979 decision. On August 5, 1980, the D.C. Circuit issued an additional order dismissing BN's petition to review the Commission's March 17, 1980 order in No. 80–1423, *Burlington Northern, Inc. v. ICC.*

We are informed that hearings did go forward in Finance Docket No. 29066 and related cases, and the record in those proceedings was closed with the filing of briefs by all parties on June 17, 1980. The ICC now has before it a full record and may be expected to issue a decision in the near future approving, disapproving or modifying the Joint Line Agreements—including the very "default" provision upon which BN based its claim before the district court.