**JACKSONVILLE MARITIME ASSOCIATION, INC., Amoco Transport Company, and Madden Marine Panama, S.A., Plaintiffs,**

v.

**The CITY OF JACKSONVILLE, Defendant.**

**No. 82–571–Civ–J–B.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 10, 1982.

---

Gary A. Bubb, Jacksonville, Fla., for plaintiffs.

William L. Allen, Jacksonville, Fla., for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

Plaintiffs initiated this suit on June 4, 1982, seeking declaratory and injunctive relief, challenging the validity of a local ordinance. After conducting a hearing, the Court, on June 21, 1982, denied plaintiffs' request for preliminary injunctive relief.[1] The case was subsequently set for trial on an expedited basis. The matter was tried before the Court, sitting without a jury, beginning in the afternoon of November 3, 1982, and ending the following morning.

Ordinance 82–419–162,[2] enacted on May 11, 1982, by the Jacksonville City Council and approved on May 19, 1982, by the city's mayor, imposes a purported user fee upon

1. Although the Court denied plaintiffs' request that enforcement of the ordinance be enjoined during the pendency of this case, the Court did provide plaintiffs some measure of relief. In its order of June 21, 1982, the Court required defendant to maintain an accounting of all funds collected, to transfer the funds to the registry of the Court weekly, and to notify all entities billed pursuant to the ordinance that the funds collected would be retained by the Court pending resolution of this case.

2. Ordinance 82–419–162 provides as follows:

ORDINANCE 82–419–162 AN ORDINANCE AMENDING CHAPTER 310, ORDINANCE CODE OF THE CITY OF JACKSONVILLE, TO ADD A NEW SECTION 310.112 TO PROVIDE A USER FEE FOR SHIPS ANCHORED IN STORAGE ON THE ST. JOHN'S RIVER WHICH IS WITHIN THE TERRITORIAL LIMITS OF THE CITY OF JACKSONVILLE; EXCEPTIONS; PROVIDING AN EFFECTIVE DATE.

BE IT ORDAINED by the Council of the City of Jacksonville:

Section 1. Chapter 310, Ordinance Code is amended by a new section 310.112 to read as follows:

Section 310.112: User fee established

(a) Definitions:

(1) For the purpose of this part the term "ship" means any vessel; longer than one hundred (100) feet in length, which is primarily used for the transportation of goods or passengers, and which is generally fitted to navigate in the high seas but shall not include

those vessels that are anchored for repairs or being repaired at a shipyard.

(2) For the purpose of this part the term "United States" includes any or all of the fifty states, the District of Columbia, Puerto Rico, the territories and possessions of the United States, and the Trust Territory of the Pacific Islands.

(b) Applicability. This part shall apply to that navigable portion of the St. Johns River, and tributaries which are within the Territorial Limits of the City of Jacksonville.

(c) Rate of User Fee. For every ship which is anchored in storage on the St. John's River for a period exceeding forty-eight (48) hours, there shall be imposed a user fee on said ship which shall be computed at the rate of fifty cents ($0.50) per foot per day, which in no event shall exceed two hundred fifty dollars ($250.00) per day.

(d) Method of collection. The Public Parking Officer shall be empowered and authorized to collect such a user fee from the owner or operator of the ship. Such collection shall be done on a weekly basis, and in a manner which is further approved by the Public Parking Officer.

(e) Fine. Any ship affected by this part which does not comply with the user fee shall be assessed an administrative fine not to exceed five hundred dollars ($500.00) for each day of non-compliance.

Section 2. This ordinance shall become effective upon signature by the Mayor or upon becoming effective without the Mayor's signature.

certain vessels anchored in the Port of Jacksonville. The ordinance seeks to recover fifty cents per foot, up to a maximum of two hundred fifty dollars, per day from "every ship which is anchored in storage on the St. John's River for a period exceeding forty-eight (48) hours." The ordinance applies to the navigable portion of the St. John's River and its tributaries within the territorial limits of the City of Jacksonville, Florida. Presently, five ships are being subjected to the user fee.

Plaintiffs, the local maritime association and two shipowners being assessed the user fee, offer several grounds, predominantly constitutional, in support of their contention that the ordinance is invalid. Specifically, plaintiffs maintain that the ordinance violates the commerce clause, the due process clause, the equal protection clause, and the supremacy clause of the United States Constitution. In addition to their constitutional challenges, plaintiffs assert that the ordinance is unenforceable because defendant acted in violation of the Constitution of the State of Florida in passing the ordinance and because defendant failed to file the ordinance with the Federal Maritime Commission in a timely fashion. The Court begins with plaintiffs' last argument.

Simply stated, plaintiffs contend that the ordinance comes within the scope of the Shipping Act, 46 U.S.C. §§ 801, *et seq.,* that the Act required defendant to file the ordinance with the Federal Maritime Commission on or before its effective date, and that defendant failed to file the ordinance in a timely manner. Therefore, plaintiffs conclude, the ordinance must be considered void and unenforceable, thereby disposing of this entire controversy.

■ The Court disagrees. While plaintiffs point both to sections 814 and 816[3] as imposing filing requirements in this case, it is clear that section 814 has no application here. That section applies only to multi-party "agreements" made between parties subject to the Shipping Act. *See City of Galveston v. Kerr Steamship Co., Inc.,* 362 F.Supp. 289, 292–93 (S.D.Tex.1973), *aff'd,* 503 F.2d 1401 (5th Cir.1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975). The ordinance in question here, however, is a schedule of rates unilaterally issued by defendant. As such, the ordinance appears to fall more nearly within the purview of section 816, which applies to certain unilaterally fixed rates, rules and regulations.

**3.** Title 46, U.S.C. § 814 provides, in pertinent part, as follows:

Every common carrier by water, or other person subject to this chapter, shall file immediately with the Commission a true copy, or, if oral, a true and complete memorandum, of every agreement with another such carrier or other person subject to this chapter, or modification or cancellation thereof, to which it may be a party or conform in whole or in part, fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; pooling or apportioning earnings, losses, or traffic; allotting ports or restricting or otherwise regulating the number and character of sailings between ports; limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; or in any manner providing for an exclusive, preferential, or cooperative working arrangement. The term "agreement" in this section includes understandings, conferences and other arrangements.

Title 46, U.S.C. § 816 provides as follows:

No common carrier by water in foreign commerce shall demand, charge, or collect any rate, or charge which is unjustly discriminatory between shippers or ports, or unjustly prejudicial to exporters of the United States as compared with their foreign competitors. Whenever the Federal Maritime Commission finds that any such rate, fare, or charge is demanded, charged, or collected it may alter the same to the extent necessary to correct such unjust discrimination or prejudice and make an order that the carrier shall discontinue demanding, charging, or collecting any such unjustly discriminatory or prejudicial rate, fare, or charge.

Every such carrier and every other person subject to this chapter shall establish, observe, and enforce just and reasonable regulations and practices relating to or connected with the receiving, handling, storing, or delivering of property. Whenever the Commission finds that any such regulation or practice is unjust or unreasonable it may determine, prescribe, and order enforced a just and reasonable regulation or practice.

The various rates, rules and regulations within the ambit of section 816 are required by 46 C.F.R. § 533.3 to be filed with the Federal Maritime Commission.[4] The time limitation for filing with the Maritime Commission is set forth in 46 C.F.R. § 533.4,[5] which indicates that "[e]very tariff or tariff change shall be filed on or before its effective date." Here, defendant failed to file the ordinance with the Federal Maritime Commission until over a month after its effective date. Thus, plaintiffs argue that the ordinance is unenforceable.

■ Plaintiffs' position in this regard is seriously undercut, however, by 46 C.F.R. § 533.2.[6] That provision indicates that the purpose of the filing requirement is to enable the Maritime Commission to discharge its responsibilities under section 17 (46 U.S.C. § 816) of the Shipping Act by keeping informed of the rates charged at various terminals and to keep the public informed as well. While section 533.2 states that compliance with the filing requirement is mandatory, it further states that "failure to file the required tariffs may result in a civil penalty of not more than $100 for each day such violation continues." No other sanction is provided for. Thus, the question of whether the ordinance comes within the terms of section 816 need not be reached in this context. Filing with the Federal Maritime Commission was accomplished by defendant, albeit untimely. The only sanction provided for such late filing is a civil, monetary penalty—not the invalidation of the ordinance. Accordingly, plaintiffs' argument that the ordinance is void for untimely filing must fail. However, plaintiffs' assertion that defendant was required to file the ordinance with the Federal Maritime Commission does cause the Court to consider the possible application in this case of the doctrine of primary jurisdiction.[7]

4. The requirement that all rates, fares or charges covered by 46 U.S.C. § 816 be filed with the Federal Maritime Commission is imposed by 46 C.F.R. § 533.3, which provides as follows:

PERSONS WHO MUST FILE.

Every person other than the Department of Defense, including the military department and all agencies of the Department of Defense, carrying on the business of furnishing wharfage, dock, warehouse, or other terminal facilities as described in § 533.1, including, but not limited to terminals owned or operated by States and their political subdivisions; railroads who perform port terminal services; and warehousemen who operate port terminal facilities, shall file in duplicate with the Bureau of Domestic Regulation, Federal Maritime Commission, and shall open business inspection at all its places of business a schedule or tariff showing all its rates, charges, rules, and regulations relating to or connected with the receiving, handling, storing, and/or delivering of property at its terminal facilities: *Provided, however,* That rates and charges for terminal services performed for water carriers pursuant to negotiated contracts, and for storage of cargo and services incidental thereto by public warehousemen pursuant to storage agreements covered by issued warehouse receipts need not be filed for purposes of this part.

5. Title 46, C.F.R. § 533.4 provides as follows:
Every tariff or tariff change shall be filed on or before its effective date, except as required by Commission Order or agreements approved pursuant to section 15, and be kept open for public inspection as provided in § 533.3. Initial tariff filings required by this part shall be filed within one hundred and eighty (180) days after the effective date of this part. Tariffs on file with the Commission on the effective date of this part need not be republished or refiled but shall be amended within one hundred and eighty (180) days after the effective date of this part to conform to the provisions hereof.

6. Title 46, C.F.R. § 533.2 provides as follows:
The purpose of this part is to enable the commission to discharge its responsibilities under section 17, Shipping Act, 1916, by keeping informed of practices and rates and charges related thereto, instituted and to be instituted by terminals, and by keeping the public informed of such practices. Compliance is mandatory and failure to file the required tariffs may result in a civil penalty of not more than $100 for each day such violation continues. (46 U.S.C. 820(a)).

7. Although neither party raised the issue, the Court is empowered to consider the doctrine's application *sua sponte. Louisiana & Arkansas Railway Company v. Export Drum Company,* 359 F.2d 311, 314 (5th Cir.1966); *Crawford v. University of North Carolina,* 440 F.Supp. 1047, 1056 n. 4 (M.D.N.C.1977). In so doing, the Court notified the parties that it considered the question of primary jurisdiction a substantial one and permitted the parties the opportunity to file memoranda of law.

## PRIMARY JURISDICTION

■ The concept of primary jurisdiction, also referred to as the deference doctrine, *see Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 580 n. 1 (1st Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979), serves as a means of coordinating administrative and judicial machinery. When there is a basis for judicial action, independent of agency proceedings, courts may nonetheless route the threshold decision as to certain issues to the agency charged with primary responsibility of the particular activity involved. *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970).

Both the underlying rationale and the proper application of the doctrine of primary jurisdiction were extensively discussed by the Supreme Court in *United States v. Western Pacific Railroad Company,* 352 U.S. 59, 64–65, 77 S.Ct. 161, 165–166, 1 L.Ed.2d 126 (1956):

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of agency questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. The two factors are part of the same principle, "now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." [citations omitted].

While conceding that the Court must be guided by the discussion in *Western Pacific* set forth above, plaintiffs assert that the justifications for applying the doctrine of primary jurisdiction are absent in this case. Specifically, plaintiffs argue that the federal agency's expertise is not needed in this case and that the questions presented are within the conventional competence of the judiciary. In addition, plaintiffs point out that the federal agency is ill-equipped to handle constitutional claims such as those raised in this matter and that application of the doctrine of primary jurisdiction would serve no purpose other than to subject the parties to undue expense and delay. For the reasons that follow, the Court finds that the need for application of the doctrine of primary jurisdiction in this case is compelling and that plaintiffs' assertions to the contrary are without merit.

■ Though couched in constitutional terms, the pivotal underlying issues presented in this case are whether the fee imposed by the ordinance is reasonable and whether the fee is discriminatory in its scope. For example, the commerce and the due process questions hinge on the reasonableness of the fee, *see Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972); *Hess v. Department of Revenue of the State of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), while the equal protection issue involves the alleged discrimination of the scope of the ordinance. *See McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–1105, 6 L.Ed.2d 393 (1961). The very fact that the inquiry centers around the reasonableness

of the fee and discrimination by the fee provides the Court a sufficient basis to invoke the doctrine of primary jurisdiction. *Danna v. Air France*, 463 F.2d 407, 409 (2d Cir.1972) held that "[i]t is beyond dispute that claims that filed tariffs are either unreasonable in amount or unduly discriminatory in effect are questions that in the first instance must be determined by the agency with which the tariffs are filed." *Accord, Robinson v. Baltimore & Ohio Railroad Company*, 222 U.S. 506, 511, 32 S.Ct. 114, 116, 56 L.Ed. 288 (1912); *Lichten v. Eastern Airlines, Inc.*, 189 F.2d 939, 941 (2d Cir. 1951). Here, the ordinance has been filed with the Federal Maritime Commission and it appears that the Court should defer its ruling until after the federally-created agency is afforded the opportunity to evaluate the fee.

This conclusion is bolstered by the Supreme Court's further elucidation of the applicability of the doctrine of primary jurisdiction in *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 305–06, 93 S.Ct. 573, 582–583, 34 L.Ed.2d 525 (1973). There, the court looked to three factors to determine whether the judiciary should defer its ruling pending an initial determination by the appropriate administrative agency: (1) whether the agency determination lay at the heart of the task assigned the agency by Congress; (2) whether agency expertise was required to unravel technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court. *See also Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 114, 94 S.Ct. 466, 467, 38 L.Ed.2d 344 (1973); *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d at 580–81.

These considerations are satisfied here. Central to the Federal Maritime Commission's task of reviewing fees under section 816 are the questions concerning the reasonableness of the fee and the discriminatory scope of its application. Furthermore, because these inquiries are at the heart of the agency's functions, a premature ruling by the Court on these matters could frustrate Congress' desire for uniform regulation in this area. *See e.g., Mercury Motor Express,*

*Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir.1973) (importance of uniformity recognized especially in cases involving the reasonableness of rates).

Moreover, questions such as the reasonableness of the fee in the maritime context are peculiarly within the expertise of the Federal Maritime Commission. The Maritime Commission regularly evaluates fees and tariffs of all sorts to determine their reasonableness within the meaning of the Shipping Act. In fact, it has been stated that with respect to the Federal Power Commission that "[t]o reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission." *Montana-Dakota Utilities Co. v. Northwestern Public Service Company*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). This statement is equally applicable to the function of the Federal Maritime Commission in this matter. Thus, plaintiffs' argument that the case does not raise questions requiring the special expertise of the federal agency is without merit.

Finally, the Court finds that the Federal Maritime Commission's determinations concerning reasonableness and discrimination would materially aid the Court. As noted above, the questions to be evaluated by the Maritime Commission are central to this dispute. Many of the constitutional arguments are based upon the assertion that the fee is either unreasonable in amount or discriminatory in its reach. Regardless of whether the Commission's determinations are binding upon the Court, such determinations, made by an experienced agency on critical issues within the agency's expertise, can do nothing but assist the Court in reaching the appropriate result. This is especially true here, where the question of reasonableness or discrimination within the maritime context cannot be characterized as "within the conventional experience" of the Court. *See United States v. Western Pacific Railroad Company*, 352 U.S. at 64, 77 S.Ct. at 165.

The remainder of plaintiffs' arguments against applying the doctrine of primary jurisdiction are also unpersuasive. Plaintiffs' assertion that the doctrine should not be invoked because the Federal Maritime Commission is not equipped to decide constitutional issues merits little discussion. It is beyond question that the Commission has no jurisdiction to resolve constitutional claims. Rather, one of the Commission's functions is to evaluate various rates, fees and tariffs in the context of the Shipping Act. The entire statutory framework is designed to permit the Commission to review these various matters before the courts attempt to pass upon constitutional questions. Furthermore, as noted above, the Commission's determinations will subsequently assist the Court in evaluating the constitutional claims presented.

Likewise, plaintiffs' argument that application of the doctrine of primary jurisdiction would serve only to create undue expense and delay for the parties also fails. The Court must attempt to resolve this case on the narrowest legal grounds available, especially since constitutional issues are involved. *Shamloo v. Mississippi State Board of Trustees of Institutions of Higher Learning,* 620 F.2d 516, 524 (5th Cir.1980). In fact, the Supreme Court has stated that "[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). Because this case could conceivably be resolved on statutory, rather than constitutional, grounds, the Court is required to begin its analysis there. Since the Federal Maritime Commission must, in this case, be afforded the opportunity to consider the statutory aspects, the Court should apply the doctrine of primary jurisdiction regardless of the delay that may be incurred.

In addition, the considerations concerning delay in this case militate strongly against plaintiffs' argument. The Court has han-dled this case expeditiously, having tried the matter within six months of the date on which it was filed. Any additional delay or expense which does accrue from the application of the doctrine of primary jurisdiction stems directly from the parties' own failure to address the issue in a more timely manner. The Court was forced to raise the question of primary jurisdiction *sua sponte* as a post-trial matter. Thus, the Court is unmoved by the alleged problems caused by applying the doctrine.

Because most, if not all, of the reasons for applying the doctrine of primary jurisdiction cited in the foregoing authorities are present in this case, the Court finds that any additional expense or delay likely to be incurred by the parties is outweighed by the judicial and administrative interests which will be advanced by applying the doctrine. The parties' arguments to the contrary are, accordingly, rejected.

Normally the Court's analysis would be complete with the conclusion that application of the doctrine of primary jurisdiction is appropriate in this case. However, in a complete reversal of their earlier position that the ordinance was required to be filed with the Federal Maritime Commission, plaintiffs, in their recent memoranda addressing the issue of primary jurisdiction, assert that the Federal Maritime Commission has no jurisdiction to consider the propriety of the ordinance. Therefore, the Court will review the basis on which the ordinance in question comes within the scope of the Federal Maritime Commission's jurisdiction, thereby enabling the Court to refer the matter to that agency.

■ In determining whether the Federal Maritime Commission may properly review the fee under section 816, the key question is whether defendant is an "other person" subject to the Shipping Act as that term is used in section 816. The term is defined in 46 U.S.C. § 801 to include one who "furnishes ... terminal facilities ... in connection with a common carrier."[8] Initially,

---

8. The pertinent portion of 46 U.S.C. § 801 provides as follows:

The term "other person subject to this chapter" means any person not included in

the Court notes that the question whether a party falls within the coverage of a statute must be determined in the first instance by the agency responsible for administering the statute. *Blue Ribbon Quality Meats, Inc. v. Federal Trade Commission*, 434 F.Supp. 159, 163 (W.D.Mo.1976), *aff'd*, 560 F.2d 874 (8th Cir.1977); *see also Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Therefore, the ultimate determination on the jurisdictional question must be made by the Federal Maritime Commission.

Without presuming to rule upon the question of the Federal Maritime Commission's jurisdiction over this matter, the Court notes that it appears likely that jurisdiction will be accepted by the Commission. In *Louis Dreyfus Corp. v. Plaquemines Port, Harbor and Terminal District*, No. 79–45 (FMC July 30, 1982), the Maritime Commission held that a port authority's user fee levying a flat rate upon certain vessels entering the port in exchange for certain port services similar to those offered here was within the Commission's jurisdiction. The Commission expressly repudiated the notion that an entity must perform proprietary functions in order to come within the meaning of "other person" as defined in section 801. Instead, the Commission, in finding the port authority's fee within its jurisdiction, established a "control" theory of jurisdiction. The Commission stated that "[a]n entity need not directly or physically provide terminal services to be deemed an 'other person' subject to the Act. [I]t is the control of terminal rates . . . which constitutes 'furnishing' terminal facilities and confers Commission jurisdiction." *Id.*, slip op. at 14–15. The Commission then concluded that the "practice of assessing . . . a fee for providing vessels . . . essential health, safety and security services constitutes the furnishing of 'other terminal facilities' within the meaning of section [801]." *Id.*, slip op. at 15. Therefore, the Maritime Commission concluded that it had the authority to review the propriety of the fee

under section 816. *Plaquemines* appears to control the jurisdictional question in this case.

Further support exists for concluding that the Maritime Commission will accept jurisdiction. The Commission has been granted a broad mandate to exercise "complete power and authority to prevent abuses [in the shipping industry], and to enforce regulations made by it for the protection of shippers, boat owners, and all concerned." 53 Cong.Rec. 8096 (1916) (remarks by Rep. Burke). The *Plaquemines* decision seems to represent a recent step by the Commission towards exercising the broad power granted it by Congress.

Finally, the parties' arguments to the contrary are not persuasive. As mentioned above, the "proprietary function" concept of jurisdiction relied upon by plaintiffs has been rejected by the Commission. Moreover, *Bethlehem Steel Corp. v. Federal Maritime Commission*, 642 F.2d 1215 (D.C.Cir. 1980), cited by plaintiffs for the proposition that jurisdiction does not lie with the Maritime Commission, is not on point. There, the Maritime Commission found the fee in question to be only for the purpose of recouping the costs of the navigational harbor and not for paying for terminal related services. Only on the basis of that finding did the Maritime Commission refuse jurisdiction. Had the fee been for the purpose of paying for terminal related services, it appears that the Commission would have accepted jurisdiction. Because the ordinance in this case seeks to charge for various terminal related services such as police and fire protection, *Bethlehem Steel* does not apply.

Given the Federal Maritime Commission's apparent jurisdiction in this matter and the compelling interests presented in favor of exercising the doctrine of primary jurisdiction, the Court will refrain from reaching the merits of this action so that the parties may first present their positions to the Maritime Commission.

the term "common carrier by water," carrying on the business of forwarding or furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water.

Having reached such a conclusion, the Court has the option of retaining the case on its docket pending the administrative agency's determination or of dismissing the action. *Far East Conference v. United States,* 342 U.S. 570, 576–77, 72 S.Ct. 492, 495–496, 96 L.Ed. 576 (1952); *Burlington Northern, Inc. v. Chicago and North Western Transportation Company,* 495 F.Supp. 109, 114 (D.Minn.1980) *aff'd,* 649 F.2d 556 (8th Cir.1981). Plaintiffs argue that the case should be stayed rather than dismissed because the trial has already been conducted and the Court has retained custody, by a previous order, of a large sum of money collected under the terms of the ordinance. With respect to plaintiffs' first point, the Court notes that this action will be fully reviewed by the Federal Maritime Commission and, possibly, by the United States Court of Appeals, District of Columbia Circuit, before this Court will again consider the matter. The Court finds, in all probability, that following the above-mentioned reviews the case will be in a different posture than it is at this time. Therefore, the brief trial previously conducted was, at best, premature and, quite probably, insufficient to resolve this case. However, in the event that a further trial proves to be unnecessary, the parties may move to reopen this action pursuant to Rule 60, F.R.Civ.P. As to the funds presently held in its registry, the Court will order the Clerk to return those funds to defendant.

Accordingly, it is

ORDERED:

1. That, in accordance with this Opinion, the Clerk shall enter a Judgment of Dismissal without prejudice.

2. That the Clerk shall return to defendant all funds and interest held in the registry of the Court pursuant to the Court's order entered in this case on June 21, 1982.