**ALASKA EXCURSION CRUISES, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants;**

Westours, Inc., Intervening Defendant.

Civ. A. Nos. 83–2366, 84–0889.

United States District Court, District of Columbia.

April 17, 1984.

## MEMORANDUM

GESELL, District Judge.

Plaintiff seeks preliminary injunctive relief preventing the United States from allowing defendant-intervenor Westours, Inc. to conduct boat tours during the coming summer within the harbor of Skagway, Alaska, pursuant to Charter Orders issued by the Maritime Administration (Marad) in 1977 and 1981.[1] Plaintiff's principal contentions are that Marad's actions in granting the Charter Orders violated the Shipping Act of 1916, 46 U.S.C. § 802(a), were in conflict with a 1975 Marad General Policy Notice, and were arbitrary and capricious.[2] After considering the briefs of the parties and hearing full argument, the Court has determined that plaintiff's motions for preliminary injunction should be denied.[3]

The factors to be considered in passing on a motion for preliminary injunction are well established. They include (1) plaintiff's likelihood of success on the merits; (2) whether irreparable harm will occur in the absence of an injunction; (3) whether other parties will be injured if an injunction is issued; and (4) where lies the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours*, 559 F.2d 841, 843 (D.C.Cir.1977).

■ Plaintiff has demonstrated little or no likelihood of success on the merits. Its primary argument, that 46 U.S.C. § 802(a) prohibits a non-United States citizen from operating a vessel in coastwise trade, finds little support in the language of that provision read in light of the statutory scheme for regulation of coastwise trade. Section 802(a) states:

§ 802. Corporation, partnership, or association as citizen

(a) Within the meaning of this chapter no corporation, partnership, or associa-

---

1. Plaintiff originally sought relief which would, in essence, have barred Westours from operating vessels on any part of the Lynn canal in southeastern Alaska, of which Skagway Harbor is a part. At oral argument and in its reply brief, however, plaintiff limited the relief it seeks at this stage of the case to an order preventing Westours from conducting sightseeing tours in Skagway Harbor, where plaintiff operates its sightseeing business in competition with Westours.

2. Plaintiff has filed two separate actions, C.A. No. 83–2366 and C.A. No. 84–0889. Each suit involves the same parties. Although the issues raised in each suit are not completely identical, they largely overlap with respect to the motions for preliminary injunction and the cases were consolidated for oral argument. The Court considers here the issues presented by both motions; separate Orders accompany this Memorandum.

3. Westours vigorously contests plaintiff's standing to challenge the actions of Marad with respect to Westours' Charter Orders. Although the issue is not clear cut, it would appear that plaintiff meets the standing criteria set out in *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and its progeny. In light of the disposition reached herein, however, the Court need not make a final determination of this question.

tion shall be deemed a citizen of the United States unless the controlling interest therein is owned by citizens of the United States, and, in the case of a corporation, unless its president or other chief executive officer and the chairman of its board of directors are citizens of the United States and unless no more of its directors than a minority of the number necessary to constitute a quorum are non-citizens and the corporation itself is organized under the laws of the United States or of a State, Territory, District, or possession thereof, but in the case of a corporation, association, or partnership operating any vessel in the coastwise trade the amount of interest required to be owned by citizens of the United States shall be 75 per centum.[4]

Plaintiff contends that the last phrase of § 802(a) prohibits operation of a vessel in coastwise trade by any corporation not 75 percent United States-owned. The Court reads the statute quite differently.

Section 802(a) delineates which business entities are considered United States citizens "within the meaning of this chapter." Among other requirements, a "controlling interest" in the entity must be owned by United States citizens. For those vessels "in the coastwise trade," however, a greater degree of United States ownership is required; the entity which operates them must be 75 percent United States-owned in order to "be deemed a citizen of the United States" "within the meaning of this chapter." Section 802(a) is thus definitional in

character. It does not grant any privileges or impose any restrictions, but merely groups corporations, partnerships, and associations into those deemed United States citizens and those deemed non-citizens. Any privileges or restrictions which follow from this distinction must be found elsewhere in the Act.

With respect to coastwise trade two other complementary provisions serve to impose substantive restrictions on those not deemed United States citizens under § 802. Pursuant to 46 U.S.C. § 289 a vessel must be United States-*owned* in order to engage in coastwise trade.[5] Moreover, approval must be obtained from the Secretary of Commerce before any United States-owned vessel can be leased to "any person not a citizen of the United States." 46 U.S.C. § 808. Sections 289, 802 and 808, therefore, provide the statutory mechanism for ensuring American ownership and ultimate control of the coastwise merchant marine fleet. Operation of United States-flag vessels in coastwise trade by noncitizens is not, as plaintiff argues, absolutely barred by § 802(a), but is rather left to the discretion of the Secretary of Transportation under § 808.

 No contention is made that Westours is a United States citizen within the meaning of § 802(a). It therefore must obtain approval under § 808 to engage in coastwise trade, and it has done so.[6] The vessels it operates are United States owned.[7] Westours' operation of its boat

**4.** Section 802(b) defines "controlling interest"; § 802(c) defines "75 per centum" ownership.

**5.** 46 U.S.C. § 289b (1981) grants an exception, however. That provision states that "passengers may be transported on Canadian vessels between ports in southeastern Alaska . . . until the Secretary of Transportation determines that United States-flag service is available to provide such transportation."

**6.** Plaintiff has raised the argument that Westours' charters do not allow for sightseeing tours but only for point-to-point service. Westours specifically requested an interpretation of its charter from Marad with respect to this issue, and Marad concluded that the charter did allow for sightseeing tours in Skagway harbor. Such a conclusion was clearly permissible by the

terms of the charter and does not constitute an abuse of discretion.

**7.** Plaintiff makes the novel argument that since Westours operates the vessels in question under a long-term bareboat charter it should be deemed the "owner" of the vessel, noting that a bareboat charterer is treated as an owner *pro hac vice* for some purposes under admiralty law. There is no indication, however, that Congress intended such a construction with respect to the statutes at issue. Absent such an indication the plain meaning of these statutes must be followed and the Court concludes that plaintiff's contention in this regard has little likelihood of success.

tours in the Skagway harbor thus appears to be in accord with the statutory requirements set down by Congress, and plaintiff's argument that § 802(a) has been violated shows little merit.[8]

Plaintiff also argues that the grant of Charter Orders to Westours by Marad conflicts with a 1975 General Policy Notice which stated that Marad "will no longer grant its approval pursuant to the provisions of 808 and 835 of Title 46, U.S.C., for the demise or bareboat charter of vessels in the coastwise trade to persons who do not meet the standards of 802(a) of Title 46, U.S.C." 40 Fed.Reg. 28,832 (July 9, 1975).

It is clear, and the government does not contest, that Marad's actions in approving Westours' charters are inconsistent with the 1975 Notice. The issue is whether Marad is bound by that statement. Because the General Policy Notice was simply a notification to the public of the course of conduct Marad intended to take, and was not issued as a rule or regulation pursuant to the Administrative Procedure Act, 5 U.S.C. § 552 *et seq.*, the Court does not believe the Notice is likely to be held to have the binding effect of law.

■ The distinction between a substantive, binding rule and a mere statement of policy was explained by the D.C. Circuit in *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33 (D.C.Cir.1974).

An administrative agency has available two methods for formulating policy that will have the force of law. An agency may establish binding policy through rulemaking procedures by which it promulgates substantive rules, or through adjudications which constitute binding precedents. A general statement of policy is the outcome of neither a

rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. . . .

The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings. . . . A properly adopted substantive rule establishes a standard of conduct which has the force of law. . . .

A general statement of policy, on the other hand, does not establish a "binding norm."

506 F.2d at 38 [footnotes omitted]. The 1975 General Policy Notice therefore could not have prevented Westours from seeking an exception to this expressed general policy nor prevented the agency from making an exception, at least under the special factual circumstances presented here.

■ Plaintiff's claim that Marad's approval of Charter Orders for Westours' operations was arbitrary and capricious also appears to have little or no merit. The agency's Charter Order in 1978 was based on the conclusion that (1) no United States flag vessel was providing the planned service; (2) the vessel to be used was United States built, owned, documented, and manned; (3) Congress had recognized that "lack of adequate water transportation in southeastern Alaska requires unique solutions and prohibitions"; and (4) the charter would increase tourism and hence aid the local economy.[9] The 1981 Charter Order was based on substantially similar considerations.[10] These conclusions are amply supported in the Administrative Record and are fully consistent with the agency's re-

---

**8.** The additional contentions that Marad's renewal of the Westours' vessels' licenses is unlawful under 46 U.S.C. § 65i, and that the Certificates of Documentation for those vessels are invalid under 46 U.S.C. § 65o, rest in whole on plaintiff's arguments with respect to § 802(a) and need not be discussed separately.

**9.** *See* Administrative Record filed in C.A. No. 83–2366, document 9.

**10.** *Id.,* document 16.

sponsibility to regulate coastwise trade in accord with the concerns expressed by Congress in the governing maritime statutes. Moreover, the agency's deviance from its 1975 General Policy Notice is fully justified by the unique circumstances in southeastern Alaska, circumstances which Congress has explicitly recognized. *See* note 5, *supra.*

Plaintiff has thus shown little or no likelihood of success on its legal contentions. Turning to the other considerations enunciated in *Holiday Tours,* plaintiff has come forth with a significant showing of possible irreparable harm. Plaintiff's financial condition is precarious, and if forced to compete with Westours in the coming tourist season it may face bankruptcy. Offset somewhat by this showing, however, is the fact that an injunction would also place significant economic burdens on Westours. In addition to the certain losses from a prohibition on continuation of its established harbor tour business, Westours would also face additional possible losses from the effect of such a prohibition on its other integrated tourist programs.

Finally, the public interest favors denying the preliminary relief sought by plaintiff. Evidence was presented that an injunction would decrease service availability to the detriment of the economy of southeastern Alaska.[11] Conversely, plaintiff has made no showing that continuation of Westours' harbor tours will operate to the detriment of the national interest in a strong merchant marine, given the still-significant United States interest in Westours'

vessels and the unique circumstances in southeastern Alaska.

Particularly where, as here, issuance of a preliminary injunction would alter the *status quo* rather than preserve it, the Court must be reluctant to simply shift economic burdens from one party to another. A showing that "the facts and law clearly support the moving party" is necessary to justify such intrusive relief. *Doe v. New York University,* 666 F.2d 761, 773 (2d Cir.1981), quoted in *National Association of Rehabilitation Facilities, Inc. v. Schweiker,* 550 F.Supp. 357, 365 (D.D.C. 1982). No such showing has been made here. Taking into account plaintiff's failure to demonstrate a significant likelihood of success on the merits, considerations of the public interest, and the balance of the equities between the parties, the Court must therefore conclude that preliminary injunctive relief is inappropriate and plaintiff's motions for preliminary injunction must be denied. Appropriate Orders denying the motions in C.A. No. 83–2366 and C.A. No. 84–0889 are filed herewith.

---

**11.** See particularly the affidavits of Robert W. Ward, Jr., Director of the Skagway Convention and Visitors Bureau, and Don Dickey, of the Alaska Department of Commerce & Economic Development, Division of Tourism, attached as exhibits to Westours' memorandum in opposition to plaintiff's motions for preliminary injunction.