**ALASKA EXCURSION CRUISES, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. Nos. 83–2366, 84–0889.**

United States District Court, District of Columbia.

Sept. 28, 1984.

John P. Meade, Hill, Betts, & Nash, Washington, D.C., for plaintiff.

Lois R. Zuckerman, Asst. U.S. Atty., Civil Division, Washington, D.C., for defendants.

Stuart S. Dye, Graham & James, Washington, D.C., for intervenor Westours.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on numerous motions by defendants, defendant-intervenor Westours, Inc., plaintiff Alaska Excursion Cruises, Inc. ("AEC"), and potential plaintiff-intervenor Offshore Marine Service Association, Inc. ("OMSA"). Similar motions, including motions to consolidate filed by plaintiff, have been filed in two related cases: *AEC v. United States, et al.*, No. 83–2366, and *AEC v. United States, et al.*, No. 84–0889. The court will grant plaintiff's motions to consolidate. Accompanying Orders set forth the court's rulings on the motions now before it; this Memorandum explains the court's reasons for so ordering and establishes guidelines for the future litigation of these cases.

## BACKGROUND

This litigation began when AEC filed *AEC v. U.S.*, No. 83–2366, which challenged the U.S. Maritime Administration's ("Marad") approval of three charter orders and Marad's interpretation of the charter order for a ship named the GLACIER QUEEN, authorizing defendant-intervenor Westours to operate vessels off the coast of Alaska in alleged competition with a harbor tour service run by plaintiff AEC. In its original complaint, AEC, assuming that the vessels were American-owned but operated by the foreign-owned Westours, alleged that Marad's approval of the charter orders violated the requirements of the Shipping Act of 1916, 46 U.S.C. §§ 801 *et seq.*, as amended, and a 1975 Marad Policy Notice pertaining to charter orders for foreign operated vessels. AEC also alleged that Marad's interpretation of the GLACIER QUEEN charter order as permitting a harbor tour operation in Alaska's Skagway harbor, in direct competition with plaintiff, was arbitrary and capricious and not in accordance with the law and Marad regulations. Cross-motions for summary judgment on these claims were filed, and became ripe for decision in February 1984. However, before this court, which was on assignment in another jurisdiction, could rule on these motions, plaintiff filed the related action *AEC v. U.S.*, No. 84–0889. In its original complaint in that action, plaintiff added the U.S. Coast Guard as a defendant, essentially realleged the allegations of its complaint in No. 83–2366, and additionally alleged that the Coast Guard's issuance of "Certificates of Documentation" to the Westours operated vessels violated the above-noted provisions and regulations governing documentation of vessels. On March 21, 1984, plaintiff filed a motion for preliminary injunction in both cases, seeking an injunction against Westours' operation of its Skagway harbor tour until the merits of these cases were decided. In this court's absence, United States District Judge Gerhard A. Gesell denied plaintiff's motions and subsequent motions for reconsideration, on the ground that plaintiff was unlikely to succeed on the merits and the

equities forbade issuance of an injunction, see Memorandum filed April 17, 1984 in No. 83–2366 and No. 84–0889. 595 F.Supp. 14. Thereafter, OMSA filed a motion to intervene, and defendants and defendant-intervenors filed motions for summary judgment in No. 84–0889. This court, having recently returned but not yet having ruled on the dispositive motions in No. 83–2366 or No. 84–0889, convened a status conference on July 2, 1984. At that status conference, AEC indicated that during discovery subsequent to Judge Gesell's ruling in No. 84–0889, it had uncovered evidence that would change the posture of both cases and would make the court's ruling on the pending dispositive motions unnecessary.

Since that status conference, the parties have filed a flurry of motions. AEC now alleges that, on the basis of newly discovered evidence, the court can no longer assume that the vessels at issue are American owned but foreign operated. AEC now alleges that the vessels are, in fact, *owned* and operated by Westours, a foreign corporation. AEC now argues that the court should not rule on the primary issue presented by its original complaints, namely, whether the agencies acted improperly in permitting operation of American owned but foreign operated vessels, since it is now AEC's contention that the boats are foreign owned, which would allegedly make the agency approvals patently unlawful. AEC seeks to amend its complaints in both cases. Its proposed amended complaint in No. 83–2366 alleges that Marad had reason to know of the vessels' foreign ownership, and acted arbitrarily and capriciously and without regard to the law in ignoring that information and approving the charter orders. AEC's proposed amended complaint in No. 84–0889 alleges that the Coast Guard, faced with evidence of foreign ownership, violated its regulations, the Vessel Documentation Act, 46 U.S.C. §§ 12101, *et seq.*, and Section 802(a) of the Shipping Act, 46 U.S.C. § 802(a), by documenting the vessels as American owned. AEC has also filed motions to compel discovery on the ownership issue in both cases, and seeks an enlargement of time to file its response to the summary judgment motions in No. 84–0889 until discovery is completed.

The United States and Westours vigorously oppose AEC's efforts to amend its complaint and initiate further discovery. They argue, *inter alia*, that AEC's contentions regarding foreign ownership are meritless and have not yet been presented to Marad or the Coast Guard, and that the court should not permit AEC to amend its complaint or compel discovery for these reasons. Further, argue defendants, the court should decide the jurisdictional issues presented in previously filed summary judgment motions before proceeding and, since AEC's motions to amend should be denied, the court should decide the legal issues presented in the original complaints and thus dismiss these cases.

## DISCUSSION

### A. *Introduction*

Rather than discussing each of the many motions before the court separately, the court will summarize its holdings in this Introduction, discuss the legal issues permeating the motions filed in Parts B through E, and set forth its rulings on each motion in attached Orders.

First, the court holds that AEC has standing to challenge only Marad's and the Coast Guard's actions with regard to the GLACIER QUEEN. AEC has not adequately demonstrated that the operation of the FAIRWEATHER or the GLACIER QUEEN II is injuring or threatens to injure its interests to give it standing to challenge agency approvals of those vessels. Second, the court holds that several of the issues presented by the heretofore filed summary judgment motions should be decided now to avoid future confusion in this litigation. The court agrees with Judge Gesell's reasoning that Marad and Coast Guard approval of an American owned but foreign operated vessel is not violative of the provisions of the Shipping Act and not forbidden by Marad's non-binding 1975 Policy Notice. The court will defer ruling, however, on the propriety of Marad's interpretation of the

GLACIER QUEEN charter order as permitting a harbor tour.

Third, the court holds that Alaska Excursion's motions to amend its complaints will be granted so that the ownership issue can be considered. However, the court believes that both of these cases, filed against the United States, are properly treated as straightforward challenges to agency actions. Therefore, the court will deny plaintiff's motions to lift the protective order in No. 83–2366 and compel further discovery in No. 84–0889. The court believes that administrative exhaustion principles permit court review of the agencies' approvals in light of alleged evidence of foreign vessel ownership, but do not permit this court to go beyond a properly designated administrative record to litigate the ownership issue *de novo*. Therefore, the court will deny plaintiff's discovery motions, but will order both the Coast Guard and Marad to supplement their administrative records with all evidence of the ownership of the GLACIER QUEEN that was before them when they issued their relevant approvals. The court will later review the two administrative records to decide if the agencies acted arbitrarily or not in accordance with law. Although the court will be reviewing distinct administrative records, it believes consolidation of Nos. 83–2366 and 84–0889 is in the interest of judicial economy. Finally, the court will deny OMSA's motion to intervene.

### B. *Jurisdictional Issues*

 In the dispositive motions heretofore filed in both cases and in their oppositions to plaintiff's motions to amend its complaints, the federal defendants and Westours vigorously argue that the principles of standing, exhaustion of administrative remedies, and laches bar plaintiff from bringing these actions. With regard to the standing challenge, all sides agree that the law is well established. The Supreme Court's most recent formulation of standing requirements echoes the Court's prior holdings that a plaintiff must demonstrate constitutionally required injury *and* must show that he falls within the "zone of interests" protected or regulated by the statute allegedly violated by defendants' actions. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472–75, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700 (1982); *accord, Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Autolog Corp. v. Regan*, 731 F.2d 25 (D.C.Cir.1984). To meet the constitutional requirement, a plaintiff must show, *inter alia*, "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. In these cases, plaintiff challenges Marad's and the Coast Guard's approval of charter orders and certificates of documentation, respectively, for three vessels operated by Westours: the FAIRWEATHER, the GLACIER QUEEN II, and the GLACIER QUEEN. Plaintiff operates a harbor tour service in the Skagway harbor near Juneau, Alaska, and has demonstrated no fixed intention to operate vessels outside the Skagway harbor area. But of the three vessel approvals being challenged, defendants have only authorized the GLACIER QUEEN to operate a competing harbor tour in the Skagway harbor area. The vessel now named the GLACIER QUEEN II is currently authorized only to operate a ferry service in the distant Prince William Sound, *see* Plaintiff's Complaint in No. 83–2366 at ¶ 6; Charter Order MA–4409(a). The vessel now named the FAIRWEATHER is currently authorized only to operate a *ferry* service in either the Skagway harbor or the Prince William Sound. *Id.* at ¶ 8; Charter Order MA–5257. Plaintiff has not demonstrated that a ferry service in the distant Prince William Sound or a point-to-point ferry service in the Skagway harbor area competes in any way with its harbor tour service, or that it is injured or threatened by the operation of those services. In fact, under the current charter orders for the GLACIER QUEEN II and the FAIRWEATHER, Westours cannot operate a competing har-

bor tour service; to do so it would have to obtain additional Marad approval as it did with respect to the GLACIER QUEEN. It was only by Marad's recent interpretation of the GLACIER QUEEN's charter order MA–5258 that the agency authorized a competing harbor tour service that could injure plaintiff's business. Plaintiff therefore has standing only to challenge the charter order and its interpretation by Marad for the GLACIER QUEEN; it has not demonstrated that the other two vessels, or Marad's approval of their charter orders, operate so as to injure or threaten injury to AEC. Therefore, plaintiff has constitutional standing only to challenge agency action with regard to the GLACIER QUEEN.

 Defendants and Westours argue that, even with regard to the GLACIER QUEEN, plaintiff falls outside the "zone of interests" protected by the Shipping Act of 1916. Further, in their oppositions to plaintiff's motions to amend its complaints, defendants argue that plaintiff falls outside the "zone of interests" protected by the Vessel Documentation Act administered by the Coast Guard. Thus, argue defendants, plaintiff fails to satisfy the "prudential" prong of the standing test. Defendants contend that the Shipping Act, which governs foreign ownership and operation of coastwise vessels, was intended to ensure a viable American merchant marine for defense purposes, and that Congress did not intend by the Act to protect Americans from foreign economic competition. The court disagrees. As the Court of Appeals for the District of Columbia Circuit recently made clear, a plaintiff satisfies the prudential "zone of interests" tests if it can show even a *slight* indicia that it was intended to be protected by the statute in question, *Autolog Corp.*, 731 F.2d at 29. Plaintiff has pointed the court to language in a relevant Senate Report and to Marad's own interpretation of the Shipping Act that indicate that the Act's regulation of foreign control was intended, in part, to benefit American shipowners competing economically in the coastwise trade. *See* authorities cited in Plaintiff's Memorandum of Points and Authorities in Opposition to De-

fendant's Motion to Dismiss, filed January 27, 1984 in No. 83–2366, at 7–13; Sen.Rep. No. 573, 66th Cong., 2d Sess. (1920). Plaintiff competes economically with Westours' GLACIER QUEEN in the Skagway harbor, and thus falls within the "zone of interests" protected by the Act, even though the Act's primary purpose was to ensure a strong American merchant marine. *See Autolog Corp., supra.*

 Defendants and Westours argue that even if plaintiff falls within the "zone of interests" protected by the Shipping Act, it does not fall within the zone protected by the Vessel Documentation Act, and therefore has no standing to amend its complaint to challenge the Coast Guard's administration of that Act. Westours argues that the Vessel Documentation Act is merely procedural, and that the only persons with standing to challenge its enforcement are those whose vessels are being documented thereunder. Again, the court disagrees. Although the Act is admittedly procedural in nature, its requirements were established to ensure American ownership of vessels so that the requirements of the Shipping Act of 1916 can be enforced. As discussed above, a secondary purpose of the Shipping Act is to protect American shipowners from foreign competition. If documentation errors lead to the conclusion that a foreign ship is American, then the Shipping Act cannot be properly enforced. The two acts, then, together ensure that the purposes of the Shipping Act are carried out, and the interrelationship of the Acts confers standing on one that falls within the "zone of interests" of the substantive law to challenge the interrelated agency enforcement of the procedural Act. *See Barlow v. Collins*, 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970).

 Defendants contend that plaintiff is barred from bringing these actions because it has failed to exhaust its administrative remedies. A difficult exhaustion issue is raised by plaintiff's proposed amended complaints, but that will be discussed in Part D below. With regard to

the claims alleged in plaintiff's original complaints in both cases, the court holds that plaintiff need not pursue those claims with the agencies any further before seeking relief in this court. First, as plaintiff points out and defendants do not adequately contest, neither the Coast Guard nor Marad *have* any administrative avenue for a maritime competitor to contest the agency's approval of a competitor's vessel. Nevertheless, before commencing No. 83–2366, plaintiff contacted Marad on several occasions to question the legitimacy of its charter orders for the GLACIER QUEEN and to protest against any interpretation of the orders that would permit Westours to operate a harbor tour service in the Skagway harbor. In those communications, plaintiff, at that time without any evidence that the GLACIER QUEEN may be foreign owned, questioned whether the Shipping Act permitted charter orders for a foreign *operated* vessel. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss in No. 83–2366 at 14–16; Plaintiff's Exhibit R–38 attached thereto. Plaintiff, which did not contemplate a Skagway harbor tour until after approval of the 1982 GLACIER QUEEN charter orders, did not challenge Marad's approval of the orders before they were issued. But prior to Marad's 1983 expanded interpretation of those charter orders, plaintiff contacted the agency to object to any expansion and to indicate its legal opposition to the underlying orders. Marad rejected plaintiff's entire challenge, and issued a final statement that the orders as interpreted were valid. With regard to the Coast Guard, plaintiff contacted the agency prior to the initiation of No. 84–0889, before suspecting that the GLACIER QUEEN was foreign owned, again to protest the agency's documentation of the vessel because it was operated by a foreign corporation. The Coast Guard refused to overturn its decision or to take any action due to the pendency of No. 83–2366 in this court. In these actions, both the Coast Guard and Marad have argued vigorously that, as a legal matter, the agencies acted properly in approving operation of a foreign controlled vessel.

This circuit has recently stressed that absent a statutorily mandated exhaustion requirement, exhaustion is required prior to court action only as a "prudential matter," if the purposes of the exhaustion requirement would be served by refusing to permit court action. *I.A.M. National Pension Benefit Fund v. Stockton Tri Industries,* 727 F.2d 1204, 1208–09 (D.C.Cir. 1984). Here, there are apparently no administrative procedures that were available to plaintiff to challenge the agencies' actions, *see Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1081 (D.C. Cir.1978), and plaintiff had no reason to challenge the 1982 GLACIER QUEEN charter orders and documentation until Marad's 1983 expansion of the charter orders which created competition in the Skagway harbor. The dispute over the propriety of permitting a foreign operated vessel to operate in the coastwise trade is essentially a legal dispute, and the agencies' legal position is firm. Plaintiff informally protested the agencies' position before both agencies, to no avail, and now claims, with some justification, *see* Memorandum filed April 17, 1984, denying plaintiff's preliminary injunction motion, that immediate court review is necessary because delay will irreparably harm plaintiff. Plaintiff contends that it has not "flouted" the administrative process, that further proceedings before the agency would be futile, that an administrative record for court review of the issues presented in its original complaint can be compiled, and that judicial economy will be served if its actions are entertained here. Keeping in mind that the exhaustion doctrine is not to be applied "inflexibly," the court agrees, and believes that the legal issues concerning the issuance of the 1982 GLACIER QUEEN charter orders and its interpretation can be litigated here. *See Athlone Industries v. Consumer Product Safety Commission,* 707 F.2d 1485, 1488 (D.C.Cir.1983).

Defendants' laches argument is also unmeritorious, especially with regard

to the 1982 GLACIER QUEEN charter orders and Marad's interpretation. To establish the defense of laches, it must be demonstrated that a plaintiff was guilty of unreasonable and prejudicial delay in asserting its claims. *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844–45 (D.C.Cir.1982). Here, plaintiff was unaware of the GLACIER QUEEN charter orders, and had no reason to challenge them or their expansion until it entered the Skagway harbor tour business in late 1982. Shortly thereafter, plaintiff contacted Marad to protest the orders and their expansion. Any delay by plaintiff is clearly not sufficient to bar this suit under the laches doctrine.

In sum, the court holds that plaintiff has standing to challenge the agencies' actions, and is not barred by the exhaustion or laches doctrines from asserting the claims in its original complaints.

### C. *Issues Presented by the Motions for Summary Judgment Previously Filed*

 Although the court will permit plaintiff to amend its complaints, which will change the focus of this litigation, it believes some of the legal issues presented by the heretofore filed motions for summary judgment should be laid to rest now to avoid future confusion of the issues. The court will thus treat those motions as motions for partial summary judgment.[1]

In its original complaints, plaintiff contended that Marad's approval of the GLACIER QUEEN charter orders constituted a violation of Section 802(a) of the Shipping Act of 1916, 46 U.S.C. § 802(a), and was impermissibly inconsistent with a 1975 Marad Policy Notice. When those issues were presented to the court, the undisputed facts demonstrated that the GLACIER QUEEN was American owned but operated by Westours, a foreign corporation. In both the cross-motions for summary judgment and the preliminary injunction proceedings before Judge Gesell, plaintiff claimed that issuance of charter orders to a foreign operated vessel was impermissible.

In a well-reasoned opinion after a full hearing, Judge Gesell held that Section 802(a) was merely definitional, and that 46 U.S.C. § 289 and 46 U.S.C. § 808 give Marad the authority to issue charter orders to foreign operated vessels operating in the coastwise trade in Alaska. *See* Memorandum filed April 17, 1984. He further held that the 1975 Policy Notice was not a binding rule under the legal standards established by *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 38 (D.C.Cir.1974). This court has carefully reviewed these issues and fully concurs with Judge Gesell's analysis. His Memorandum Opinion, filed April 17, 1984, is

1. Cross-motions for summary judgment have been filed in No. 83–2366, and defendants and defendant-intervenor have filed dispositive motions in No. 84–0889. These motions raise the jurisdictional issues discussed *supra*, and the court's rulings on those issues is final. The dispositive motions in both cases also present common legal issues, discussed below. The court has not addressed all of the issues presented by these motions, as it believes it should defer ruling on several issues. Although its rulings on the issues it has addressed below may prove unnecessary if plaintiff succeeds in proving the allegations of its amended complaints, the court has indicated its view on these issues so that the parties do not needlessly focus on them in the future.

The court notes that plaintiff has requested an extension of time to file its response to the dispositive motions in No. 84–0889, and has not yet filed a response. Because some of the issues presented in these motions are identical to those presented in No. 83–2366, however, plaintiff has fully addressed these issues in its cross-motion for summary judgment in that case. Therefore, the court does not believe plaintiff is prejudiced by a decision on those issues at this time. Should plaintiff believe at some future time that the new theory for relief presented in its amended complaints will fail, the court will entertain a motion for reconsideration of the decisions announced in Part C of this Memorandum.

Further, the court will deny defendant's request that summary judgment be granted in its favor in No. 84–0889 due to plaintiff's failure to file an opposition or a rule 56(f) affidavit. From the pleadings filed by plaintiff, it is obvious that plaintiff believes further briefing on the issues presented by the pending motions is unnecessary, and that new issues of fact are presented by the ownership evidence recently uncovered.

incorporated herein insofar as it addresses these issues.

The court has not, however, fully reviewed the propriety of Marad's 1983 interpretation of the GLACIER QUEEN's charter orders which permitted the operation of a Skagway harbor tour. That issue and others not addressed herein should be sharpened by the parties, and will be decided at a later date along with the new issues presented by plaintiff's amended complaints.

### D. *Plaintiff's Motions to Amend its Complaints*

 Plaintiff now claims, on the basis of information discovered after the denial of its preliminary injunction motion in No. 84–0889, that Westours, a foreign corporation, does not merely operate the GLACIER QUEEN and two other vessels, but *owns* them as well. It seeks to amend its complaint in No. 83–2366 to allege that Marad had reason to know of Westours' ownership of the vessels and that by ignoring this information, acted arbitrarily and not in accordance with law by approving the charter orders. It seeks to amend its complaint in No. 84–0889 to allege that the Coast Guard had reason to know of the foreign ownership of the vessels, and therefore acted improperly in issuing Certificates of Documentation for the vessels as American owned. For the reasons discussed in Part B above, the court does not believe that plaintiff has shown that it has been or will be injured by the agency's actions with respect to the FAIRWEATHER and GLACIER QUEEN II, and therefore plaintiff has no standing to challenge those actions under any theory. However, insofar as plaintiff's amended complaints challenge approval of the GLACIER QUEEN under a new theory, the court will grant plaintiff's motions to amend its complaints.

Although defendants properly concede that leave to amend a complaint should be freely granted, *see* Fed.R.Civ.P. 15(a), they argue that plaintiff has unreasonably delayed in coming forward with its new theory, that plaintiff's claim is clearly without merit, and that plaintiff is barred from bringing this new claim for failure to present the ownership issue to the agencies. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). If, however, plaintiff should be permitted to amend its complaint, argue defendants, the court's review should be limited to the administrative records and further discovery should not be permitted. Plaintiff argues that it has stated a meritorious claim, that it can exhaust no further administrative remedies, that this action is in the nature of a *de novo* review, and that full discovery should be permitted on the ownership issue so that the court can determine if the agencies improperly ignored evidence of foreign ownership or failed to investigate the ownership issue further.

The court does not believe that plaintiff is guilty of unreasonable delay. It did not become fully aware of the possibility that the vessels are foreign owned until new evidence was unearthed during discovery in this case, and moved to amend its complaint shortly thereafter. Neither is the court convinced that the new claims plaintiff seeks to assert are meritless. Although the evidence plaintiff has presented thus far to support its claim that the GLACIER QUEEN is owned by Westours, and not by the People's National Bank of Washington, is very skimpy, plaintiff claims that the federal defendants possess information which will further prove its allegation. If plaintiff can prove that the agencies knew that the GLACIER QUEEN was foreign owned, then its claim that they acted improperly in issuing the relevant approvals for operation in the coastwise trade may be meritorious. Unless a new claim is obviously meritless under the law, given the facts alleged, leave to amend should be freely granted.

 Defendants' argument that the amendment should not be permitted because plaintiff has failed to exhaust administrative remedies presents a more difficult question. Although plaintiff challenged Marad's approval of the GLACIER

QUEEN charter orders on the ground that the vessel was foreign operated, it never directly contended before either Marad or the Coast Guard that the vessel was foreign owned, or that either agency should further investigate the vessel's ownership to ensure that the purported American owner was not acting as a mere facade to cover Westour's ownership. A strong argument can be made that unless and until plaintiff requests the agencies to investigate this issue, this court should not review their actions.

Nevertheless, keeping in mind that, in the absence of a statutory exhaustion requirement, the court should be flexible in requiring exhaustion, this court believes that it can appropriately review the agencies' actions at this time. By issuing its charter orders, Marad implicitly determined that the GLACIER QUEEN was American owned. Similarly, by issuing the Certificate of Documentation for the GLACIER QUEEN, the Coast Guard made a final determination that the vessel was American owned. When the agencies made these final determinations, they were presumably satisfied by the evidence before them that ownership requirements were met, and they presumably considered all the evidence before them in making these determinations. Unless the agencies were to embark on new investigations of the vessel's ownership, it is highly unlikely that they would interpret the evidence that was before them any differently. If the court were to refuse to review their actions and remand for further consideration, plaintiff, who faces serious financial injury from delay, would be forced to wait for an unspecified time for further agency action. As noted above, there are no internal agency review procedures that plaintiff could invoke, and no deadline for agency review that would permit plaintiff to come back to this court after a remand and the deadline's expiration.

■■■■■ But the court does not believe that it should litigate the ownership issue *de novo.* Plaintiff seems to claim on the one hand that the agencies had evidence before them which demonstrated foreign ownership, making their actions arbitrary and capricious, and on the other hand that evidence not before the agencies will prove that the vessel was foreign owned. Plaintiff, however, is suing the United States for making an improper decision, and the court cannot conclude that an agency's decision was improper because it failed to consider evidence that was not before it, especially when the plaintiff has made no previous effort to bring such evidence before the agency. If the plaintiff believes a further investigation into the ownership issue is warranted, that request should be made to the agencies so that they can determine whether to initiate such an investigation. If they refuse to do so, then this court would be in a position to review that refusal. *See General Motors v. Federal Energy Regulatory Commission,* 613 F.2d 939, 944 (D.C.Cir.1979). Now, however, exhaustion principles permit the court only to review the final decisions that the agencies have already made—namely, that the evidence before them was sufficient to enable the conclusion that the GLACIER QUEEN was American owned. Because the agencies considered certain evidence before them when it made these decisions, an administrative record should exist to reflect that evidence. In lieu of discovery, the court can, and will, require that the administrative records presented for court review include all information on ownership that was directly or indirectly considered by the agencies at the time the relevant decisions were made. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Lloyd v. Illinois,* 548 F.Supp. 575, 590 (N.D.Ill.1982). Once such a "whole record" is presented for the court's review, the court can determine whether Marad properly concluded that the GLACIER QUEEN was American owned for the purpose of granting charter orders, and can likewise determine whether the Coast Guard's issuance of Certificates of Documentation was rational. Although it appears to the court at this point that Marad can issue charter orders based on Certifi-

cates of Documentation and need not conduct an independent review of the vessel's ownership, and that the Coast Guard has the responsibility for conducting such a review, the responsibilities of each agency can and should be made clearer during subsequent proceedings in these cases. Because the court will have to determine which agency is responsible for which functions before it can decide whether their actions were proper, and because the two cases before it present common issues of fact and law, the court believes the cases should be consolidated even though two administrative records will have to be designated and reviewed. Once those records are filed and the court has been briefed on what responsibilities regarding proof of ownership each agency has, the court can decide, after a review of the records, whether either agency acted arbitrarily and capriciously or not in accordance with the law in issuing their respective approvals. If this court were to permit plaintiff to conduct discovery and present facts not before the agencies for *de novo* review, it would be depriving those agencies of the opportunity to consider such new evidence and permitting plaintiff to use the declaratory judgment action to circumvent agency factfinding procedures. The court cannot do so consistent with exhaustion requirements. *See Burlington Northern, Inc. v. Chicago and North Western Transportation Co.,* 649 F.2d 556, 559 (8th Cir.1981). Hence no further discovery will be permitted in these consolidated cases, but both agencies will be directed to file an administrative record which will enable the court to review their consideration of the ownership issue.[2]

### E. *OMSA's Motion to Intervene*

Offshore Marine Service Association, Inc. has filed a motion to intervene in these cases as plaintiff-intervenor. OMSA is a Louisiana-based trade association made up of American shipowners and operators who do business in the coastwise trade around the country. It states that its general interest in this litigation is identical to plaintiff AEC's—it seeks to protect U.S. coastwise trade operations from foreign intervention—and claims that an adverse decision in this action would have serious impact on its members. It invokes both Fed. R.Civ.P. 24(a) and 24(b) in support of its contention that it should be granted leave to intervene, and asserts that it can aid the court in determining whether the 1975 Marad Policy notice was a binding agency rule.

 The court denies OMSA's motion. First, it was not filed until after cross-motions for summary judgment were filed in No. 83–2366 and after plaintiff's motions for a preliminary injunction were denied, and so is not timely. Second, OMSA is clearly not entitled to intervention under rule 24(a), as the disposition of this action has no effect, other than as legal precedent, on any property or interest held by OMSA.[3] As this action now stands, the only property and interests that will be affected by this court's decision are the GLACIER QUEEN (and the interests of its owner and operator) and AEC's interest in a Skagway harbor tour. A general legal interest in a pending suit does not satisfy the requirements of rule 24(a). Further, as evidenced by the flurry of papers filed by AEC already, AEC is more than capable of representing itself in this action. Finally, the court has already decided that Marad's 1975 Policy Notice was not a binding rule, and obviously needs no further assistance on that issue.

 For similar reasons, the court will decline to exercise its discretion to permit OMSA to intervene under rule 24(b). The narrow issues to be decided in this action will only be clouded and confused if a trade association representing operators in re-

---

**2.** These administrative records should also enable the court to evaluate the agencies' decisions with respect to other issues raised in this case. For example, Marad's record should include all information it considered in making its determination that the GLACIER QUEEN charter or-

ders authorized a harbor tour service in the Skagway harbor.

**3.** In fact, it is doubtful that OMSA would have standing to challenge defendants' actions should it bring suit on its own.

gions far from Alaska, which is an area of special concern under the Shipping Act, is permitted to intervene. The rights of the original parties can be adequately and expeditiously determined without the aid of OMSA, and no concrete OMSA interest or property will be affected by this action.

### F. Conclusion

The court expects that this litigation can proceed in an orderly fashion under the guidance established by this Memorandum. Barring further complications, it is anticipated that after the agencies properly designate their administrative records as described herein, dispositive motions can be filed by both sides. A status call will be convened in mid-October to establish future deadlines.

Appropriate Orders for Nos. 83–2366 and 84–0889 are attached to this Memorandum.

### ORDER

This matter came before the court on numerous motions. For the reasons set forth in an accompanying Memorandum, after careful consideration of these motions, the oppositions thereto, and the entire record in this case, it is, by the court, this 28th day of September, 1984,

ORDERED, that defendants' motion to dismiss, or in the alternative, for summary judgment is granted in part, denied in part, and deferred for later decision in part, all in accordance with the accompanying Memorandum; and it is further

ORDERED, that plaintiff's cross-motion for summary judgment is granted in part, denied in part, and deferred for later decision in part, all in accordance with the accompanying Memorandum; and it is further

ORDERED, that plaintiff's motion for leave to file an amended complaint is granted; and it is further

ORDERED, that plaintiff's motion to lift the protective order is denied; and it is further

ORDERED, that defendant motion for a protective order is granted; and it is further

ORDERED, that Offshore Marine Association, Inc.'s motion to intervene is denied; and it is further

ORDERED, that Offshore Marine Association, Inc.'s motion for leave to file an amended complaint in intervention is denied as moot; and it is further

ORDERED, that defendant-intervenor Westours' motion to strike is denied; and it is further

ORDERED, that plaintiff's motion to consolidate this action with *Alaska Excursion Cruises, Inc. v. U.S., et. al.*, No. 84–0889, is granted; and it is further

ORDERED, that all heretofore filed motions for enlargement of time to file pleadings due on or before the date of this Order are granted so that such pleadings may be filed; and it is further

ORDERED, that defendant United States Maritime Administration shall file an appropriate administrative record, as discussed in the accompanying Memorandum, no later than October 15, 1984; and it is further

ORDERED, that the parties are to appear before this court for a status conference on October 17, 1984 at 9:30 a.m.