**CONOCO, INC. and E.I. duPont de Nemours Company, Plaintiffs,**

v.

**Samuel SKINNER, Secretary of Transportation, Nicholas F. Brady, William A. Kime, Commandant of the Coast Guard, Warren G. Leback, Administrator, U.S. Department of Transportation, Carol B. Hallett, Commissioner of Customs, United States Customs Service, Defendants.**

Civ. A. No. 91–122–JLL.

United States District Court,
D. Delaware.

Dec. 16, 1991.

Richard Allen Paul of E.I. du Pont de Nemours and Co., Wilmington, Del., and Mark P. Schlefer, T.S.L. Perlman, Leonard Egan, and William C. Buckhold of Fort & Schlefer, Washington, D.C., of counsel, for plaintiffs.

William C. Carpenter, Jr., U.S. Atty. and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Sandra M. Schraibman, Asst. Director, and Susan Friedman Cohen, Civil Div. Trial Atty., for the U.S. Dept. of Justice, Rosalind Avnet Lazarus for the Dept. of Transp., Robert J. Patton, Jr., Deputy Chief Counsel and Sandra L. Jenkins, Asst. Chief Counsel, for the Maritime Admin., John Astley for the U.S. Coast Guard, and William Sandler for the U.S. Customs Service, Washington, D.C., for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Plaintiffs, E.I. du Pont de Nemours and Company ("Du Pont") and its wholly owned subsidiary Conoco, Inc. ("Conoco"), seek judicial review in this Court of federal agency action concerning documentation, ownership, and chartering of vessels in coastwise trade under the Administrative Procedure Act ("APA"). 5 U.S.C. § 701 *et seq.* (1977 & Supp.1991) (Docket Item

["D.I."] 1, 13.) Defendants, the Secretaries of the United States Departments of Transportation and Treasury, the Commandant of the United States Coast Guard, the Commissioner of the United States Customs Service, the Maritime Administrator ("MARAD"), and the United States of America, contend that the issues raised by plaintiffs fall within the exclusive jurisdiction of the court of appeals under the Administrative Orders Act ("Hobbs Act"). 28 U.S.C. §§ 2341–51 (1978 & Supp.1991). Accordingly, the defendants move this Court to dismiss the action for lack of jurisdiction.

For the reasons set forth below, this Court has determined that it lacks subject matter jurisdiction to decide the issues in this case. Therefore, granting the defendants' motion to dismiss is appropriate.[1]

## I. BACKGROUND

### A. *Statutory Framework*

#### 1. *Judicial Review*

The APA places judicial review in the forum specified in the statute relevant to the subject matter and authorizes judicial review in the district court to the extent that other statutory procedures for review are inadequate. 5 U.S.C. §§ 703, 704. Defendants claim that the Hobbs Act is the special statutory review proceeding applicable to the dispute in this case. Thus, this Court will not have jurisdiction over the plaintiffs' claim unless the procedure under the Hobbs Act is deemed to be inadequate.

Before Congress enacted the Hobbs Act, judicial review of certain agency orders was conducted de novo by special district courts of three judges with an appeal of right directly to the United States Supreme Court. H.R.Rep. No. 2122, 81st Cong.2d Sess. 4, *reprinted in,* 1950 U.S.Code

Cong.Service 4303, 4305. The Hobbs Act substituted a review by the appropriate circuit court of appeals upon the administrative record with further review by writ of certiorari to the United States Supreme Court. *Id.* at 4306. Simplicity and expedition were the expected advantages of the Hobbs Act. *Id.* Congress believed that an appeal based upon the record made before the administrative agency would "avoid the making of two records, one before the agency and one before the court, and thus [avoid] going over the same ground twice." *Id.; Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 740, 105 S.Ct. 1598, 1605, 84 L.Ed.2d 643 (1985) (avoids duplication of effort in creating of a separate record before the agency and before the district court); *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 797–98, 105 S.Ct. 1620, 1636–37, 84 L.Ed.2d 674 (judicial review by the district court, relying on same record and applying the same standard as the court of appeals, would be "duplicative, wasteful and inefficient)." Because factfinding is typically unnecessary to judicial review of agency decisionmaking, *Florida Power & Light Co. v. Lorion,* 470 U.S. at 744, 105 S.Ct. at 1607, district court review is "both a needless and time-consuming duplication of the ultimate appellate consideration." *Modine Mfg. Corp. v. Kay,* 791 F.2d 267, 270 (3d Cir.1986). Thus, the Hobbs Act eliminates the delay and expense of an unnecessary level of judicial review.

In 1986, Congress re-examined the judicial review provisions of the Hobbs Act with respect to the shipping laws. After making substantial revisions to the Shipping Act of 1916, Congress unintentionally created a bifurcated review procedure which was found to be burdensome and unnecessary.[2] H.R.Rep. No. 423, 99th

---

**1.** This Court concludes that a transfer to the appropriate forum is not necessary to serve the interests of justice. 28 U.S.C. § 1631. Plaintiffs filed a timely petition for review in the Third Circuit which has been stayed by that court until the jurisdictional issue has been resolved first in this Court.

**2.** It should be noted that the shipping laws are not a model of clarity and some errors in the

legislative process should be expected. "[The Shipping Laws] are a confusing collection of individual statutes enacted over a period of nearly two centuries ... each enacted to solve some particular problem of the day." H.R.Rep. No. 98–338, 98th Cong. 1st Sess. 113, *reprinted in,* 1983 U.S.Code Cong. & Admin.News 924, 924. Viewed as a whole, "they are poorly organized, duplicative, often obsolete, and difficult to understand and apply." *Id.* The need for

Cong.2d Sess. 15, *reprinted in,* 1986 U.S.Code Cong. & Admin.News 1545, 1555. (D.I. 23 Ex. 6; July 29, 1985 Statement of Jim Marquez, General Counsel for the United States Department of Transportation ("DOT").) The Hobbs Act, as amended in 1986, provides that:

> The court of appeals has exclusive jurisdiction ... [over] all rules, regulations, or final orders of
>
> (A) the Secretary of Transportation issued pursuant to ... 46 U.S.C.App. 802–03, 808, 835, 839, and 841a; and
>
> (B) the Federal Maritime Commission issued pursuant to ... 46 U.S.C.App. 822, 824 or 841a ... 876 ... 844–845b ... 1713 or 1716....

28 U.S.C. § 2342(3) (Supp.1991). Congress intended to merely clarify the Hobbs Act in 1986, reinstating the court of appeals' traditional jurisdiction rather than broadening the scope of its application. H.R.Rep. No. 423, 99th Cong.2d Sess. 15, *reprinted in,* 1986 U.S.Code Cong. & Admin.News 1545, 1555. (D.I. 13 at 38–39; 23 at 16–17, Exs. 6–7; 30.)

## 2. *The Maritime Laws*

The statutory framework regulating shipping does not treat the industry as a mere form of commerce. Congress wanted to build a domestic merchant marine, ultimately to be owned and operated by citizens of the United States, to carry the greater portion of its commerce and to assist in national defense in time of war or national emergency. 46 U.S.C.App. § 861 (Supp.1991). The laws serve the dual goals of ensuring a viable American merchant marine for defense and benefitting American shipowners competing economically in the coastwise [3] trade. *Alaska Excursion Cruises, Inc. v. United States,* 603 F.Supp. 541, 546 (D.D.C.1984). The Secretary of

Transportation ("Secretary") is required to keep these two underlying goals in mind when promulgating regulations and administering the shipping laws. 46 U.S.C.App. § 861.

In furtherance of the policy protective of American citizens, Congress enacted the three statutes involved in the present dispute: 1) The Shipping Act of 1916, 46 U.S.C. § 801 *et seq.* (1975 & Supp.1991); 2) the Merchant Marine Act of 1920, 46 U.S.C. § 861 *et seq.* (1975 & Supp.1991); and 3) The Vessel Documentation Act, 46 U.S.C. § 12101 *et seq.* (1991). First, the law generally prohibits, with limited exceptions, the transfer [4] of U.S. owned vessels to noncitizens unless approved by the Secretary. 46 U.S.C.App. § 808 ("The Shipping Act of 1916"). The Shipping Act of 1916 considers corporations to be U.S. citizens if: 1) the controlling interest is owned by U.S. citizens; 2) the chief executive officer and chairman of the board are U.S. citizens; 3) no more directors than a minority necessary to constitute a quorum are non-citizens; and 4) the corporation itself is organized within the United States. 46 U.S.C.App. § 802(a). But to engage in coastwise trade, the definition is more stringent and imposes an additional requirement. A "United States citizen" for corporate operation of vessels in the coastwise trade also requires that citizens of the United States own 75% of the corporation. *Id.*

Second, to ensure that American citizens have ultimate control of the coastwise merchant marine fleet, the law also restricts domestic water transport. With limited exceptions, the laws restrict transportation by water to U.S. owned vessels of merchandise between points in the United States. 46 U.S.C.App. § 883 ("The Merchant Marine Act of 1920"). The Shipping Act's

---

revision "has long been recognized by the Coast Guard who administers them, by the maritime industry that is governed by them, by Congress, and by anyone who has ever had to refer to them." *Id.* Currently, Congress is revising the laws to make them easier for the Coast Guard and the Department of Transportation to administer, less cumbersome for the maritime community, and more understandable for everyone involved. *Id.*

**3.** Coastwise trade is generally defined as the domestic transportation of passengers and merchandise. 55 Fed.Reg. 51244 (1990) (to be codified at 46 C.F.R. Part 67). (D.I. 13 at 8 n. 2.)

**4.** "Transfer" includes the sale, mortgage, lease, charter, delivery, or in any other transfer of a documented vessel.

definition of U.S. citizen and the additional ownership requirement for coastwise trade are incorporated into the Merchant Marine Act of 1920. 46 U.S.C.App. § 888.

Third, the Vessel Documentation Act, procedural in nature, ensures American ownership of vessels so that the requirements of the Shipping Act of 1916 can be met. *Alaska Excursion Cruises, Inc. v. United States*, 603 F.Supp. at 546. Vessel documentation is a type of national registration which establishes a vessel's nationality and evidences a vessel's entitlement to be employed in specified restricted trades. 46 U.S.C. § 12104; 55 Fed.Reg. 51244 (1990) (to be codified at 46 C.F.R. Part 67). In addition to general documentation, a vessel must have a coastwise endorsement to be employed in the coastwise trade. 46 U.S.C. § 12106(b). (D.I. 7 at 4; 13 at 12–13.) The coastwise endorsement is subject to the laws of the United States regulating the coastwise trade and must otherwise qualify under the coastwise laws. 46 U.S.C. § 12106 (D.I. 7 at 4; 13 at 12, 51; 23 at 28.) The regulations promulgated by the Coast Guard governing vessel documentation specifically refer to sections 802 and 808 of the Shipping Act of 1916. 46 C.F.R. § 67.03–9.[5]

· By 1958, foreign ownership of domestic corporations became increasingly common because of the robust global economy. *Ingram Barge Co. v. United States*, 691 F.Supp. 474, 478 (D.D.C.1988), *rev'd on other grounds*, 884 F.2d 1400 (D.C.Cir. 1989). Congress determined that equity and justice dictated a minor exception, ("Bowater Amendment"), to the citizenship requirement. *Id.* The Bowater Amendment, 46 U.S.C. § 883–1 (1975), eliminates the additional requirement that 75% of the shareholders of a corporation be U.S. citizens under certain conditions. *Ingram Barge Co. v. United States*, 691 F.Supp. at 479. With respect to coastwise trade under § 883, corporations unable to satisfy the exacting citizenship requirements of the Shipping Act of 1916 can still be deemed to be U.S. citizens for limited coastwise trade. *Id.* Qualifying corporations can either carry their own cargo or carry cargo for a parent or subsidiary corporation in coastwise trade under specified conditions. *Id.* With respect to vessel transfers under § 808, qualifying corporations may also be deemed to be U.S. citizens under certain circumstances.[6] *Id.*

### B. *The Parties Involved In The Dispute*

Du Pont, a Delaware corporation, produces and manufactures chemicals and chemical products. (D.I. 13 at 15; 14 at 1, 7–8, 31.) It owns all of the capital stock of Du Pont Energy Company, which owns all of the capital stock of Conoco. (D.I. 1 ¶ 6; 13 at 15; 14 at 5–6; 15 at 196.) Conoco, also a Delaware corporation, is an integrated oil company engaged in the production, transport, refining, and marketing of petroleum and petroleum products. (D.I. 1 ¶ 1; 7 at 16; 13 at 15.) Du Pont and Conoco own and charter towboats and cargo barges to transport their products on the rivers within the United States. (D.I. 14 at 33; 13 at 1, 16.) This "coastwise" trade subjects plaintiffs to the Vessel Documentation laws, the Merchant Marine Act of 1920, and the Shipping Act of 1916. (D.I. 1, 13 at 1–2.)

---

5. The parties dispute this regulation and the actual definition of U.S. citizen. More specifically, they dispute whether all three statutes at issue define "citizens of the United States" in the Shipping Act of 1916. (D.I. 13 at 50–4.) While both parties agree that vessels must otherwise "qualif[y] under the laws of the United States to be employed in the coastwise trade," they have different interpretations concerning whether § 802 is incorporated into the documentation laws and whether the citizenship requirements are tied to the vessel or to the owner. 46 U.S.C. § 12106(a)(3). (D.I. 13 at 51; 23 at 28–9.) *See* discussion *infra.*

6. The parties dispute the scope of citizenship for transfer of vessels under § 808. None of the parties dispute whether a Bowater corporation can purchase or sell vessels as a U.S. citizen. Rather, the parties dispute whether the corporation's Bowater status affects its ability to charter vessels. (D.I. 1 ¶ 14; 13 at 3, 11, 21, 23; 15 at 222, 229, 234–35, 237, 249–66, 283–293.) Thus, plaintiffs seek an interpretation of § 883–1 concerning the charter of vessels which is normally governed by § 808. *See* discussion *infra.*

Samuel K. Skinner[7], Secretary of Transportation of the United States of America, is responsible for the administration of the statutes concerning the transfer of vessels and the documentation of vessels of the United States. (D.I. 1 ¶ 2(a); 13 at 2.) The responsibility for documentation of vessels has been duly delegated by the Secretary to the Coast Guard and the responsibility for the transfer of vessels has been duly delegated by the Secretary to MARAD. 46 U.S.C.App. § 876; 46 U.S.C. §§ 2103, 2104 (1991); 49 C.F.R. §§ 1.4(b), 1.4(j), 1.46(d), 1.66(a) (1990). (D.I. 1 ¶ 2(c) and (d); 7 at 7; 13 at 11.) Both the Coast Guard and MARAD rely on representations by the owners regarding citizenship. (D.I. 7 at 9, 12, Ex. A; 15 at 194, 486.)

Nicholas F. Brady, Secretary of the Treasury, is responsible for the administration of certain statutes concerning coastwise trade. The functions under these statutes have been duly delegated to the Commissioner of the United States Customs Service. (D.I. 1 ¶ 2(e); 7 at 15 n. 13.) Customs enforces and monitors compliance with coastwise laws, based upon the documentation already issued to the vessel by the Coast Guard. (D.I. 7 at 16, Ex. D.) Customs is not authorized to make determinations regarding citizenship for purposes of the coastwise laws. (D.I. 7 at 16, Ex. D.)

## C. Jurisdiction Is The Sole Issue Currently Under Review

This Court's jurisdiction is the only disputed issue discussed in this opinion. The plaintiffs contend that this Court is the appropriate forum to resolve the substantive issues in dispute, possessing subject matter jurisdiction over their claim under the APA. On the other hand, the defendants contend that the issues raised by plaintiffs fall within the exclusive jurisdiction of the court of appeals under the Hobbs Act. Although the merits of the plaintiffs case are not determined here, a summary of the underlying dispute on the merits is necessary to understand the jurisdictional issue at hand. First, because Du Pont is unable to meet the 75% ownership requirement, defendants maintain that Conoco is not qualified as a citizen of the United States. Thus, Conoco is not entitled to either own vessels operated in the coastwise trade or to document vessels with coastwise endorsement. (D.I. 1 ¶ 8(c).) Second, in spite of Du Pont's Bowater status, defendants maintain that Conoco is not a U.S. citizen with respect to chartering vessels. (D.I. 1 ¶ 14.)[8]

### 1. Citizenship for Purposes of Coastwise Trade

Du Pont asserts that, although it no longer meets the 75% stock ownership requirement for coastwise trade, its wholly owned subsidiaries maintain their right to operate vessels in coastwise trade. (D.I. 7 at 18; 13 at 17; 15 at 178.) As plaintiffs interpret these statutes, Du Pont meets the generalized citizenship criteria and qualifies under the Bowater Amendment.[9] Du Pont is therefore deemed to be a U.S. citizen, 46 U.S.C.App. § 883–1, and its wholly owned subsidiaries must be considered to be 100% owned by a U.S. citizen. (D.I. 13 at 2, 18; 15 at 179.) In effect, plaintiffs contend that the 75% U.S. citizen test only needs to be demonstrated by Conoco, the corporation owning the vessel.

Both the Coast Guard and MARAD interpret the statutes so that Conoco is a noncitizen because it is likely that less than 75% of Du Pont's stock is citizen-owned. (D.I. 1 ¶ 8(c); 7 at 8, 12; 13 at 17–20.) Defendants maintain that Bowater status has no effect on whether a wholly owned subsidiary of such a corporation is a U.S. citizen. The defendants' policy, concerning the citizenship requirements for vessel doc-

---

7. Subsequent to the filing of this complaint, President Bush appointed Samuel Skinner to be his Chief of Staff.

8. Plaintiffs have continually advanced their position to defendants, requesting the defendants' concurrence, since 1984. (D.I. 1 at ¶ 8(b); 13 at 18.) Plaintiffs complain that the defendants' position and the resulting controversy has caused immediate, serious, irreparable injury in their business and property. (D.I. 1 ¶ 9; 13 at 2, 23–25; 15 at 187.)

9. Du Pont's Bowater status is recognized by the parties. (D.I. 1 ¶ 12; 7 at 16; 13 at 10, 20.)

umentation, is that, where a corporation owns a vessel for which coastwise documentation is sought, both the corporation owning the vessel and any other entity that the corporation relies upon to establish citizenship, must be a citizen eligible to document vessels in its own right. (D.I. 7 at Ex. A; D.I. 14 at 102–103, 111–12.) Thus, each entity in the ownership chain must be 75% owned by U.S. citizens regardless of possible qualification under the Bowater Amendment. 46 C.F.R. §§ 67.03–2(b); 221.3(c); 221.2(d)(5). (D.I. 7 at 11, Exs. A, B.) From the government's perspective, both the parent and subsidiary corporations must meet the coastwise citizenship requirements to prevent skirting such requirements by crafting tiered corporate structures.[10]

### 2. *Bowater Citizenship and Chartering Vessels*

Plaintiffs also contend that, given Du Pont's Bowater status, it is a U.S. citizen for all purposes of 46 U.S.C.App. § 808 and the vessel documentation laws. 46 U.S.C.App. § 883–1. (D.I. 7 at 19; 13 at 20–21.) Therefore, Du Pont should be able to charter vessels and to make such vessels available to other persons for compensation without prior MARAD approval because it would not be a charter with "a person not a citizen of the United States." 46 U.S.C. § 808 (1975). Furthermore, plaintiffs assert that Conoco is transformed into a U.S. citizen by virtue of Du Pont's Bowater qualification and its wholly owned status. (D.I. 1 at 17 ¶¶ 5; 7 at 20; 15 at 232, 283.) Therefore, plaintiffs contend that Conoco need not seek prior MARAD approval to charter vessels.

Defendants do not read § 883–1 as bestowing privileges of citizenship beyond the limited scope and the purpose of the statute. (D.I. 7 at 20; 15 at 234.) The government contends that the Bowater Amendment only relieves the corporation from the requirements of § 808 approval for certain documented vessels. 46 C.F.R. § 221.13. (D.I. 7 at 6.) The government maintains that approval by the Secretary is still re-

quired for the charter of a U.S. citizen owned and documented vessel by a Bowater corporation. (D.I. 7 at 7.) In the defendants' view, the limitations imposed by the Bowater Amendment require that Bowater corporations function under identical chartering restrictions as non-Bowater corporations. (D.I. 7 at 13–15.)

## II. DISCUSSION

The plaintiffs have not persuaded this Court that jurisdiction is properly in the District Court. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); 1 J. Moore, MOORE'S FEDERAL PRACTICE ¶¶ 0.60[3,4] at 625–636 (2d ed. 1991). As discussed below, this Court holds that it has no jurisdiction to interpret the exact scope of the Hobbs Act. In light of the strong preference for court of appeals review, the authority requiring resolution of ambiguities in favor of appellate review, and the unambiguous language of the Hobbs Act, this Court holds that the Hobbs Act confers exclusive jurisdiction over the plaintiffs claims to the court of appeals. The scope of the court of appeals' jurisdiction must also be construed generously to include related, ancillary issues.

### A. *Court Of Appeals Review Is Preferred*

Direct review of administrative action in the courts of appeals is preferred and presumed. "Absent a firm indication that Congress intended to locate initial [Administrative Procedure Act] review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals." *Florida Power & Light Co. v. Lorion*, 470 U.S. at 745, 105 S.Ct. at 1607; *Modine Mfg Corp. v. Kay*, 791 F.2d at 270. A statute allowing for appellate review of agency action should be construed generously absent clear and convincing evidence of a contrary congressional intent. *Vineland Chemical Co. v. United States Environ-*

---

**10.** No suggestion is intended that plaintiffs have simply devised a scheme to circumvent the law and avoid the citizenship test in the Shipping Act.

*mental Agency,* 810 F.2d 402, 406 (3d Cir. 1987); *Modine Mfg Corp. v. Kay,* 791 F.2d at 270. There is also a presumption that the designated forum is the exclusive means of judicial review, even though not explicitly stated, and any ambiguity is resolved in favor of appellate review. *Solar Turbines, Inc. v. Seif,* 879 F.2d 1073, 1077 (3d Cir.1989); *United Parcel Service, Inc. v. United States Postal Service,* 524 F.Supp. 1235, 1242 (D.Del.1981); *General Electric Uranium Management Corp. v. United States Department of Energy,* 764 F.2d 896, 903 (D.C.Cir.1985). "When an agency decision has two distinct bases, one of which provides for exclusive jurisdiction in the court of appeals, the entire decision · is reviewable exclusively in the appellate court." *Suburban O'Hare Com. v. Dole,* 787 F.2d 186, 192 (7th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 169, 93 L.Ed.2d 106 (1986).

Plaintiffs argue that the Coast Guard regulations were issued pursuant to the Vessel Documentation Act rather than to the Shipping Act of 1916.[11] Plaintiffs assert that the Vessel Documentation Laws and the Shipping Act of 1916 are not to be viewed as an "integrated whole" because the vessel documentation laws predate the Shipping Act, that the Shipping Act involves a wide variety of subjects unrelated to documentation, and that the documentation laws were revised, consolidated and enacted separately from the revision of the Shipping Act.[12] (D.I. 13 at 47 n. 28.) Allegedly, "pursuant to" only includes direct progenitive relation and clearly indirect relation should not suffice. Therefore, they contend that the regulations at issue are merely indirect references and not subject to review under the Hobbs Act. (D.I. 13 at 47.)

With respect to the citizenship issues, Congress did not depart from the sound policy of placing initial APA review in the court of appeals when enacting the Hobbs Act. It gave exclusive review of the regulation of citizenship under § 802 and the regulation of transfers under § 808 to the courts of appeals. This exclusive grant of power must be construed generously and any ambiguity must be resolved in favor of appellate review, in accordance with the strong preference for such review under the law. The challenged regulations were promulgated in accordance with the statutory mandate set forth in § 802. 54 Fed.Reg. 5387 (1989); 55 Fed.Reg. 51244, 51246–47 (1990). (D.I. 14 at 100–102, 115; 23 at 26, 31–32.) Given the generous construction of appellate jurisdiction and the fact that any ambiguity should be resolved in favor of appellate review, the court of appeals must review regulations promulgated to comply with sections 802 and 808 even if the regulations were not directly promulgated pursuant to § 802.

Additionally, there is a clear link between the issues involved in the plaintiffs' claims and the issues under the Hobbs Act. This case revolves around two fundamental issues: (1) whether the definition of U.S. citizenship for purposes of coastwise trade under the Shipping Act of 1916 includes a wholly owned subsidiary when its parent meets generalized citizenship criteria but not the heightened requirements for coastwise trade; and (2) whether corporations that qualify under the provisions of the Bowater Amendment and/or their wholly-

---

11. Plaintiffs contend that the documentation laws distinguish between citizens and corporations and, unlike the Shipping Act, impose no citizenship requirement on the shareholders of a corporation. (D.I. 13 at 47 n. 28; 51–52.) Defendants contend that the documentation laws must be read in conjunction with § 802. (D.I. 23 at 30–31.) Defendants contend that § 12106(d)(2) explicitly precludes § 802 citizenship requirement for qualifying oil spill response vessels and that this provision would not have been necessary if the rest of § 12106 had not been subject to § 802. (D.I. 23 at 30).

12. The plaintiffs fail to cite authority that the laws are not interrelated or that Congress did not intend the laws to be read as an integrated whole with respect to citizenship issues. It appears that the two statutes may be designed to complement each other. *See* S.Rep. No. 728, 86th Cong. 1st Sess. 2, 1959 U.S.Code Cong. & Admin.News 2683 (explicitly redefined the term "citizen of the United States" to eliminate differing interpretations under § 802 and the vessel documentation laws); *Alaska Excursion Cruises, Inc. v. United States,* 603 F.Supp. at 546 (Ship-

owned subsidiaries must obtain MARAD's approval in order to charter documented vessels from U.S. citizens. (D.I. 7 at 21; 13 at 67–68.) In other words, the core issue in dispute is the definition and scope of citizenship. As discussed *supra,* citizenship is at the heart of the statutory framework regulating the shipping industry. 46 U.S.C.App. § 861. Therefore, appellate review for the core issue must be generously construed to include related, ancillary issues.

This Court cannot allow the plaintiffs to "side step" the jurisdictional bar involved in deciding the core issue by merely altering their focus to a different statutory scheme. *See Energy Transp. Group, Inc. v. Skinner,* 752 F.Supp. 1, 12 (D.D.C.1990) (shift to secondary issue is "distinction without a difference"); *Vineland Chemical Co. v. Environmental Protection Agency,* 810 F.2d at 405 (allow review of agency actions which are "functionally similar" or "tantamount to" specified actions to avoid unintended and anomalous results). To the extent that plaintiffs raise claims ancillary to those matters over which the court of appeals has exclusive review under the Hobbs Act, such a claim is subject to review exclusively by the court of appeals. *Florida Power & Light Co. v. Lorion,* 470 U.S. at 743, 105 S.Ct. at 1606 (preliminary or ancillary issues to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue); *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 613–615, 86 S.Ct. 1018, 1023–24, 16 L.Ed.2d 131 (1966) (jurisdiction of court of appeals properly invoked, may assert ancillary jurisdiction over related issues). Bifurcated review of agency regulations is an inefficient division of judicial resources. *Modine Mfg Corp v. Kay,* 791 F.2d at 270.

Plaintiffs fail to persuade this Court that vessel documentation, the charter and transfer of vessels, and coastwise privileges are not dependant on U.S. citizenship.

To the contrary, plaintiffs acknowledge that the Coast Guard is required to withhold coastwise endorsement from vessels not owned by U.S. citizens (D.I. 13 at 6), concede that the citizenship requirements under the laws overlap in impact (D.I. 13 at 53–54), and specifically seek declaratory judgment from this Court that Conoco is a citizen (D.I. 1 at 17 ¶¶ 1, 2). To decide the documentation issues[13], the Court must necessarily decide the definition and scope of "citizen of the United States." A determination rendered by this Court concerning citizenship may be tantamount to an impermissible holding that Conoco meets the § 802 requirements. To decide the Bowater issue[14], the Court must necessarily decide whether § 808 approval negated by the subsequent passage of § 883–1. A determination rendered by this Court concerning the scope of citizenship under § 883–1 may be tantamount to an impermissible holding that Bowater corporations need not comply with § 808.

Furthermore, it is an established axiom that "where a statute commits review of agency action to the court of appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Telecommunications Research & Action Center v. F.C.C.,* 750 F.2d 70, 75 (D.C.Cir.1984) (emphasis in original); *Public Utility Comm'r v. Bonneville Power Admin.,* 767 F.2d 622, 626–7 (9th Cir. 1985) (if disposition of claim can affect future statutory review authority, court of appeals has exclusive jurisdiction). Congress also empowered federal courts to issue the necessary writs to protect their prospective jurisdiction. 28 U.S.C. § 1651(a); *Telecommunications Research & Action Center v. F.C.C.,* 750 F.2d at 76 (citing *Federal Trade Comm'n. v. Dean Foods, Co.,* 384 U.S. 597, 603–04, 86 S.Ct. 1738, 1742–43, 16 L.Ed.2d 802 (1966)). Therefore, any argument concerning the proper scope and extent of statutory re-

---

ping Act and Vessel Documentation Act are interrelated statutes).

**13.** These issues are the extent that § 802 is incorporated into the documentation laws and whether citizenship under the documentation laws is tied to the vessel or the owner.

**14.** This issue involves an interpretation of § 883–1 and its affect upon U.S. citizenship and the transfer of vessels.

308

view must be heard in the court of appeals in the first instance because it may curtail the Court's future jurisdiction. *Telecommunications Research & Action Center v. FCC,* 750 F.2d at 75.

Accordingly, the courts of appeals must be given an opportunity to hear claims that might affect its future statutory power of review under the Hobbs Act. A decision rendered by this Court concerning the extent that § 802 is incorporated into the documentation laws may limit the court of appeals future statutory jurisdiction to resolve regulatory issues under § 802. A decision rendered by this Court concerning the intended impact of § 883–1 on the approval provisions in § 808 may likewise limit the court of appeals future statutory jurisdiction to resolve regulatory issues under § 808. Therefore, the plaintiffs claims must be determined by the court of appeals under the Hobbs Act.

For purposes of citizenship, the core issue in dispute and an integral concept to shipping regulation, this Court is convinced that judicial review must be committed to the court of appeals irrespective of whether the plaintiff is challenging the vessel documentation laws or coastwise trade laws. Consequently, any determination regarding the citizenship status of either Conoco or its parent, Du Pont, fall squarely within the ambit of the Hobbs Act.

B. *Judicial Review By The Court Of Appeals Is Proper And Mandated By The Clear, Unambiguous Statutory Language*

 Legislation is the product of consensus and it is assumed that the legislative process achieves the most effective results. Courts must respect the will of the people and not usurp the legislative function.

> Courts are not representative bodies. They are not designed to be a good reflex of a democratic society. Their judgment is best informed, and therefore most dependable, within narrow limits. Their essential quality is detachment, founded on independence.

*Gregg v. Georgia,* 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) (quoting *Dennis v. United States,* 341 U.S. 494, 525, 71 S.Ct. 857, 875, 95 L.Ed. 1137 (1951)). *See also Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965) (courts are not superlegislatures); *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) (function of the legislature, not the courts, to balance advantages and disadvantages); 2A D. Sands, SUTHERLAND STATUTORY CONSTRUCTION § 45.01 (4th ed.1984). The allocation of judicial power must also be governed by the intent of Congress and not by the Court's views about what public policy requires. *Florida Power & Light Co. v. Lorion,* 470 U.S. at 746, 105 S.Ct. at 1608. Because judicial power is dependant on the constitution or enabling legislation, jurisdictional statutes are particularly construed "with precision and with fidelity to the terms by which Congress has expressed its wishes." *Bread Political Action Committee v. Federal Election Comm'n,* 455 U.S. 577, 580, 102 S.Ct. 1235, 1238, 71 L.Ed.2d 432 (1982); 3A SUTHERLAND STATUTORY CONSTRUCTION at § 67.03.

 The text of the statute, as enacted by Congress, controls the Court's analysis. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (where the terms of the statute are unambiguous, judicial inquiry is complete); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (words by which the legislature undertook to give expression to its wishes is most persuasive evidence of the purpose of a statute). The literal construction of a statute will be conclusive, absent clearly expressed legislative intention to the contrary. *Bread Political Action Committee v. Federal Election Comm'n,* 455 U.S. at 580, 102 S.Ct. at 1237. "The relevant question is not whether a result inconsistent with the literal language of the statute is *consistent* with the legislative history, but rather whether it is *compelled* by that history." *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d

907, 912 (3d Cir.1989) (emphasis in original); *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) ("only the most extraordinary showing from the legislative history will justify limitation of the plain meaning of the statutory language"). But the literal construction of a statute need not be followed if it produces an absurd, unjust result or a result inconsistent with the purposes and policies underlying the statute in question. 2A SUTHERLAND STATUTORY CONSTRUCTION at §§ 45.12; *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. at 571, 102 S.Ct. at 3250 (cannot thwart obvious purpose of the statute).

This Court must follow the literal construction of the Hobbs Act, absent a clear and compelling legislative intention to the contrary, unless the result would be absurd, unjust, or inconsistent with the underlying policies. This Court finds the language of the Hobbs Act to be unambiguous, notes the absence of clear legislative history to compel a contrary interpretation, and believes the literal interpretation is consistent with the underlying policies of the Hobbs Act. Therefore, dismissal of the case for lack of jurisdiction is appropriate.

### 1. *Statute Grants Exclusive Power of Review to the Court of Appeals*

■ Congress exclusively committed the judicial review of Secretary of Transportation action concerning sections 802, corporate citizenship, and 808, vessel transfer, of the Shipping Act of 1916 in the courts of appeals. 28 U.S.C. § 2342(3). The definition of "citizenship" for purposes of corporate coastwise trade and the scope of citizenship for chartering vessels under the Bowater Amendment are directly at issue and directly implicate sections 802 and 808. Therefore, the plain language of the Hobbs Act commits any Secretary action concerning citizenship to the exclusive review in the Third Circuit. *Energy Transp. Group, Inc. v. Skinner,* 752 F.Supp. at 12.

Plaintiffs argue that the Secretary lacks authority to issue any such regulations under the provisions listed in the Hobbs Act. Plaintiffs note that none of the listed statutory sections mention rules, regulations, or orders, let alone grant power to issue them (D.I. 13 at 29), even though such enabling provisions were found in the judicial review section of the FMC.[15] (D.I. 13 at 30.) Therefore, the plaintiffs argue that the Hobbs Act is ambiguous and that the legislative history must be examined. However, the Secretary of Transportation effectuates the policies of the Shipping Act, approves and conditions § 808 transactions, and can adopt all necessary rules and regulations to carry out the powers, duties, and functions of the office. 46 U.S.C. §§ 861, 808, 839, 876, 1114. This Court finds that the lack of mention of rules, regulations or orders does not make the clear statutory language ambiguous or cast doubt on the Secretary's authority to issue regulations under the listed provisions.

■ Plaintiffs also appear to contend that "Secretary of Transportation" cannot be construed to include all divisions of the Secretary and that the Coast Guard is not to be covered. (D.I. 7 at 27, 45; 23 at 23 n. 11; 30.) While the Hobbs Act clearly does not include all functions and divisions of the Secretary, it does provide judicial review in the court of appeals with respect to the statutory provisions listed in the statute. With respect to the listed statutory provisions, the literal language of the Hobbs Act does not require the regulation to be promulgated directly by the Secretary, only that it be a regulation "of" the Secretary. The Secretary, authorized by Congress to delegate its responsibilities, is responsible for the administration of the statutes concerning corporate citizenship, the transfer of vessels between U.S. citizens and corporation who are not U.S. citizens, and documentation of vessels of the United States. *See* discussion *supra.* The Secretary cannot escape ultimate responsibility under these statutes by merely delegating responsibility to an inferior agen-

---

**15.** The Federal Maritime Commission ("FMC") regulates ocean common carriers operating in the foreign commerce under the Shipping Act of 1916. The FMC is independent of the Secretary of Transportation. (D.I. 13 at 29; 23 Ex. 6.)

cy. Plaintiffs fail to provide appropriate statutory or common law support that inferior agencies acting on behalf of the Secretary are not covered by the Hobbs Act and plaintiffs fail to prove that the Coast Guard and MARAD were acting independently from the Secretary.[16] Thus, this Court finds that these were regulations "of" the Secretary of Transportation and the Court finds no ambiguity merely because inferior agencies initially issued the regulations.

## 2. Legislative History Does Not Compel a Result Inconsistent with the Literal Language of the Hobbs Act

While the plaintiffs concede that the "words and numerals" of the Hobbs Act seem to be clear and unambiguous, they contend that the plain language does not reflect Congressional intent. (D.I. 13 at 28; 23 at 1.) "The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification." (D.I. 13 at 28 n. 13; quoting *United States v. Monia*, 317 U.S. 424, 431, 63 S.Ct. 409, 412, 87 L.Ed. 376 (1943).) Plaintiffs argue that until 1986, the court of appeals did not have original jurisdiction to review acts of the Secretary or any of his/her delegates. Allegedly, reference in the revised Hobbs Act to the Secretary and to sections 802, 808 was added as an afterthought and based upon the mistaken belief that MARAD determinations under those sections had previously been reviewable in the courts of appeals. Therefore, the plaintiffs conclude that any "plain language" that broadens the appellate review under the Hobbs Act is clearly contrary to Congressional intent.

While this Court agrees that Congress intended merely to clarify the law and to reinstate the existing judicial review before the 1986 revision, plaintiffs fail to persuade this Court that there is compelling evidence of clear Congressional intent to stray from the literal language of the statute or that these sections were not previously reviewable by the court of appeals. Moreover, a

literal construction of the Hobbs Act does not lead to absurd results in this case. To the contrary, while defendants' interpretation is consistent with the underlying Congressional concerns, the plaintiffs' interpretation contravenes the underlying rationale for the enactment of the Hobbs Act.

■ First, given the state of disarray in the shipping laws, some inadvertence in the legislative process can be expected. *See* discussion *supra* at n. 2; *Zambardino v. Schweiker*, 668 F.2d 194, 199 (3d Cir.1981) (upheld Secretary's interpretation even though varies from statute, consistent with statutory mandate). However, this Court rejects plaintiffs' assertion that mere Congressional inadvertence will compel a result inconsistent with the literal language of the Hobbs Act in the present case.

The 1986 legislation addressed a number of subjects, one of which was to clarify the scope of judicial review in the Hobbs Act. Apparently, the Merchant Marine Committee had little input into the legislation, there was no testimony concerning the review provisions, the Senate failed to produce a committee report, and the House Judiciary report contained several misnomers and errors. (D.I. 13 at 40–41.) Assuming that the errors and misnomers were material and that testimony and reports were necessary for thorough consideration, this Court cannot find the necessary indication of legislative intent in such an unfocused, incomplete, and half-hearted legislative history. The plaintiffs do not persuade this court that such a legislative history compels any result. *Bread Political Action Committee v. Federal Election Comm'n*, 455 U.S. at 581, 102 S.Ct. at 1238 (legislative history too brief and ambiguous to indicate "clearly expressed legislative intention"); *Lindahl v. Office of Personnel Management*, 470 U.S. at 810, 105 S.Ct. at 1643 (J. White Dissent) (where legislative history creates only debatable speculations, courts should not neglect the comparatively

---

**16.** To the contrary, it appears that both the Coast Guard and MARAD were acting on the Secretary's behalf and with full approval from the Secretary. (D.I. 13 at 19; 14 at 110, 115, 143; 30.)

unambiguous meaning of the statute itself).

Plaintiffs argue that the Hobbs Act must be read as an "integrated whole" and that the Hobbs Act's definition of "Agency" excludes the Coast Guard. 28 U.S.C. § 2341.[17] From this definition, plaintiffs conclude that the Hobbs Act was not intended to cover judicial review of the Coast Guard and this constitutes compelling evidence of Congressional intent. (D.I. 13 at 47.) However, the Secretary of Transportation is also not a "defined" term but specifically referred to in the Hobbs Act. Plaintiffs explain that MARAD must be interchangeable with the Secretary but fail to explain why such interchangeability is not possible with the Coast Guard. Not only is the term "Agency" not used in the provision at issue, but the interchangeability of terms precludes any finding that the "Agency" definition contains a compelling, clear indication of Congressional intent.

Plaintiffs also argue that Congress did not intend for the Hobbs Act to cover MARAD regulations. (D.I. 13 at 27; 30–40.) Although plaintiffs concede that MARAD *orders* may be subject to appellate review, they argue that the Hobbs Act must not be construed to include MARAD *regulations* because only final orders were covered prior to 1986 and Congress did not intend to broaden the scope of the Hobbs Act in 1986. (D.I. 13 at 44.) Thus, plaintiffs contend that only MARAD final orders, not regulations, are to be subject to judicial review in the court of appeals under the Hobbs Act. However, it was well recognized that "regulations and rules were reviewable 'orders' under the Hobbs Act," *Commonwealth Edison Co. v. United States Nuclear Regulatory Comm'n,* 830 F.2d 610, 615 (7th Cir.1987); 4 K. Davis, ADMINISTRATIVE LAW § 23.5 (2d ed.1982), and it was likely that Congress wanted to sharpen the intended coverage of the Hobbs Act by explicitly listing the previously inferred terminology.[18] A Congressional focus on clarity is especially likely given the lack of clarity in the shipping laws and the resulting inefficiencies. *See* discussion *supra* at n. 2 and *infra* at 31. Absent specific support that Congress departed from the broad judicial interpretation of "orders", this court will not presume that Congress intended such a fine distinction between the terms "orders" and "regulations." Because the plaintiffs offer no compelling evidence that Congress intended such a fine distinction to be made, this argument must be rejected.

Second, the legislative history indicates that the court of appeals had exclusive review before the 1986 clarification. The Hobbs Act covered MARAD final orders under authority of the Shipping Act subject to judicial review under § 31[19] but § 31 did not define, describe, or delimit the class of agency action subject to such review. (D.I. 13 at 33–37; 23 at 17–19.) Congress appeared to commit MARAD orders to the exclusive jurisdiction of the court of appeals because MARAD had authority to issue reviewable orders under § 31 and continued to include MARAD in subsequent amendments to the Hobbs Act. This Court rejects plaintiffs' assertion that § 31 was "generally understood" to only apply to common carrier violations. (D.I. 13 at 33–4.) Plaintiffs fail to demonstrate that this mere "understanding" necessarily reflected Congressional intent or that it con-

---

**17.** "Agency" is defined to mean: "(A) the Commission, when the order sought to be reviewed was entered by the Federal Communications Commission, the Federal Maritime Commission, the Interstate Commerce Commission, or the Atomic Energy Commission, as the case may be; (B) the Secretary, when the order was entered by the Secretary of Agriculture; (C) the Administration, when the order was entered by the Maritime Administration; and (D) the Secretary, when the order is under section 812 of the Fair Housing Act." (D.I. 13 at 45–46; 23 U.S.C. § 2341.)

**18.** 2A SUTHERLAND STATUTORY CONSTRUCTION at § 45.12 (interpretation assumes the legislature was aware of existing statutes, rules of statutory construction, and judicial decisions).

**19.** 19. Section 31 of the Shipping Act of 1916 provided "the venue and procedure ... in suits brought to enforce, suspend, or set aside any order of the board under this Act, shall ... be the same as in similar suits in regard to orders of the Interstate Commerce Commission...." (D.I. 23 at 17; 39 Stat. 738, codified at 46 U.S.C.App. § 830.)

stituted a binding limitation on the exercise of judicial authority under § 31.

Furthermore, although this Court could presume that Congress knew the state of the law both when it enacted the Hobbs Act and when it clarified the Hobbs Act [20], the legislative history indicates that Congress not only knew the state of the law but it enacted an unambiguous statute to serve the public policy. "In discerning what it was that Congress understood, we necessarily attach 'great weight' to agency representations to Congress when the administrators 'participated in drafting and directly made known their views to Congress in committee hearings.'" *Lindahl v. Office of Personnel Management,* 470 U.S. at 788, 105 S.Ct. at 1631 (quoting *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 31, 102 S.Ct. 821, 830, 70 L.Ed.2d 792 (1982)).

The DOT informed Congress that "MARAD has certain responsibilities under section 2 ("§ 802") concerning citizenship; under sections 9 ("§ 808"), 37, 41, concerning the transfer of U.S. vessels to foreign registry or for scrapping; and general authority under section 43 for rulemaking." (D.I. 23 Ex. 6; July 29, 1985 letter to the Honorable Robert W. Kastenmeier, Chairman, Subcommittee on Courts, Civil Liberties, and the Administration of Justice from Mr. Jim Marquez, General Counsel, U.S. DOT.) DOT's suggested wording reflected existing power and DOT's language ultimately was written into the statute. The Department of Justice ("DOJ"), referring to DOT's July 29th letter, stated that the Secretary's orders pursuant to sections 2, 9, 37, 43 are currently subject to direct review in the courts of appeals and that "the suggested amendment would simply make it clear that no change in this arrangement is intended." (D.I. 23 Ex. 7; September 30, 1985 letter to the Honorable Robert W. Kastenmeier, Chairman, Subcommittee on Courts, Civil Liberties, and the Administration of Justice from James M. Spears, Acting Assistant Attorney General, U.S. DOJ.)

Not only does this Court attach great weight to the government's representations to Congress, this interpretation of the law apparently went unchallenged until the arguments in the pending case. The comments received from the Maritime Administrative Bar Association [21] and the American Institute for Shippers' Associations, Inc.[22] failed to contradict the government view in their statements and plaintiffs offer no evidence that contradictory views were aired during the legislative mark-up or on the Senate floor when other misnomers and errors were being corrected. (D.I. 13 at 41; citing 132 Cong.Rec. 7372 (1986).) The Shippers' Associations even warned of the consequences and complications resulting from a lack of clarity in the law.[23]

---

**20.** 2A SUTHERLAND STATUTORY CONSTRUCTION at § 45.12. Plaintiffs cite to cases where the district court conducted judicial review of agency determinations under sections 802 and 808. (D.I. 13 at 31–32.) The Court rejects the contention that several cases arising from one plaintiff proves district court review both because this Court assumes that the Congress was aware of these cases and their relationship to the Hobbs Act, *see* discussion *infra,* and because citizenship was not directly at issue. *Alaska Excursion Cruises, Inc. v. United States,* 595 F.Supp. 14, 16 (D.D.C.1984) (no contention made that corporation was a U.S. citizen within § 802(a)); *Alaska Excursion Cruises, Inc. v. United States,* 603 F.Supp. 541, 544 (D.D.C.1984) (vessels owned and operated by a foreign corporation); *Alaska Excursion Cruises, Inc. v. United States,* 608 F.Supp. 1084, 1085 (D.D.C.1985) (corporation is a non-U.S. citizen as defined in § 802).

**21.** Federal Judicial Improvements–1985: Hearings on H.R. 3049 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice, 99th Cong. 1st Sess. 241 (1985) (July 31, 1985 letter to the Honorable Robert W. Kastenmeir, Chairman, from Ms. Anne E. Mickey, President Maritime Administrative Bar Association, and attached statement). ("Maritime Bar Statement of 7/31/85".)

**22.** Federal Judicial Improvements–1985: Hearings on H.R. 3049 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice, 99th Cong. 1st Sess. 241 (1985) (September 13, 1985 letter to the Honorable Robert W. Kastenmeir, Chairman, from Mr. Ronald N. Cobert, General Counsel of the American Institute for Shippers' Associations, Inc.) ("Shippers' Associations Statement of 9/13/85").

**23.** Mr. Cobert discussed the "actual detrimental effect of the jurisdictional uncertainties." Shippers' Associations Statement of 9/13/85. In the Shippers' Associations opinion, "any technical legislation enacted by Congress should contain

Plaintiffs now belatedly assert that Congress mistakenly added MARAD to the original Hobbs Act, but that this was a "harmless" error, and that MARAD really wasn't subject to appellate review as stated. This Court is not inclined to presume that Congress would enact futile legislation or maintain the useless provisions through two subsequent amendments. 2A SUTHERLAND STATUTORY CONSTRUCTION at § 45.12. This Court is also not inclined to presume that an error, no matter how harmless, would remain uncorrected over a period of 41 years. Because plaintiffs offer no evidence to support these presumptions, they are rejected.

Third, the end result from the literal construction of the Hobbs Act is not absurd, unjust, or inconsistent with the underlying purposes of the Act. The enacted clarification, based upon what Congress perceived the law to be, is consistent with underlying purposes of the Hobbs Act. Congress understood that the modern trend was to eliminate double layers of review, making agency orders reviewable directly in the court of appeals, and that the vast majority of important administrative agency actions are initially reviewable in the court of appeals.[24] The uncontested testimony indicated that a two layered system of review was recognized by treatise writers and courts as being wasteful and time consuming because administrative agencies perform the same function as the district court. Also, the questions open for judicial review are commonly questions of law or a review of the record to assess the sufficiency of evidence to support the agency's conclusion. These are matters in which the district court plays the same role as the court of appeals. *Id.;* Maritime Bar Statement of 7/31/85 ("performance of appellate functions at the federal district court level places unwanted and unnecessary demands on the strained resources of the courts." "Hobbs Act provides substan-

tive continuity and procedural uniformity to judicial review of agency orders.")

In the present case, not only did Conoco and Du Pont provide the "facts" with respect to the determination of their citizenship, but the parties do not disagree as to the facts provided. The parties only dispute whether the facts, as provided, qualify the corporations to be deemed U.S. citizens under the law. (D.I. 11; 12; 13 at 67.) Therefore, the fact-finding function of this Court is unnecessary because there is no genuine issue of material fact for this Court to resolve. Judicial review by this Court would be an identical review on an identical record applying an identical standard. Not only would district court review be "both a needless and time-consuming duplication of the ultimate appellate consideration," *Modine Mfg Co. v. Kay*, 791 F.2d at 270, it would be adverse to the philosophy underlying the Hobbs Act.

In fact, plaintiffs' interpretation of the Hobbs Act contravenes the underlying goals of the Hobbs Act and thwarts the obvious purpose of the statute. Plaintiffs contend that while final orders of MARAD may be subject to the Hobbs Act, MARAD rules and regulations are not. Plaintiffs contend that while MARAD may be subject to the Hobbs Act, Coast Guard regulations based upon the same or similar issues are not. Plaintiffs contend that while § 808 may fall within the ambit of the Hobbs Act, the rules governing § 808 do not. Finally, plaintiffs contend that while the § 802 citizenship issues may fall within the Hobbs Act, the determination of citizenship under the documentation laws do not. In short, the plaintiffs advocate a bifurcated review which the Hobbs Act sought to eliminate. Therefore, plaintiffs' interpretation is inconsistent with the policies underlying the Hobbs Act.

clear and specific language...." *Id.* More specifically, the lack of clarity in the exclusive jurisdiction authorization required concurrent filings in district court and court of appeals.

**24.** Federal Judicial Improvements–1985: Hearings on H.R. 3049 Before the Subcommittee on

Courts, Civil Liberties, and the Administration of Justice, 99th Cong. 1st Sess. 241 (1985) (July 19, 1985 letter to the Honorable Robert W. Kastenmeir, Chairman, from James J. Carey, Vice Chairman of the Federal Maritime Commission).

## C. *Adequate Relief In The Court Of Appeals*

Where statutory review is available in the court of appeals, statutory review rarely will be inadequate. *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d at 78; *Solar Turbines, Inc. v. Seif*, 879 F.2d at 1077; *Modine Mfg v. Kay*, 791 F.2d at 270; *United Parcel Service, Inc. v. United States Postal Service*, 524 F.Supp. at 1244-47. If the record is ultimately deemed to be incomplete, the Third Circuit can appoint a special master or remand the record to the agency for completion. *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607; *Telecommunications Research & Action Center v. FCC*, 750 F.2d at 78.

This Court finds no extraordinary circumstances to warrant its judicial review. The Third Circuit can determine the justiciability of claims, the standing of the parties, and the merits of the disputed legal issues without undue cost, delay, or prejudice. In fact, the Third Circuit is designed to review narrow issues of law like the ones involved in this case and, as discussed *supra*, Congress prefers resolution of issues like the ones currently in dispute to be in the Third Circuit. The plaintiffs contend that the Customs Service is not under the Secretary and the court of appeals cannot reach that agency. (D.I. 13 at 63 n. 33.) However, plaintiff has not demonstrated that the Customs Service is essential to proper determination of the issues or that it would not be bound by the determination of the issues involved. Plaintiffs cannot circumvent the application of the Hobbs Act merely by naming the Customs Service as a defendant. (D.I. 23 at 42.)

Plaintiffs also allege that the record is inadequate for appellate review. (D.I. 13 at 62.) However, "[r]ules issued without an evidentiary hearing are reviewable by the court of appeals where the issues are legal and not factual." ADMINISTRATIVE LAW at § 23.5. A "record" can be compiled throughout the course of informal action. *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607 (formal hearing is not required to create an agency record).[25] Because the focal point of the dispute is the legal interpretation of the shipping laws, not an administrative record, appellate review is appropriate. Plaintiffs cite to *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) for the proposition that appellate review is only proper where district court fact finding unnecessarily duplicates an adequate administrative record. (D.I. 13 at 41.) But this Court finds the administrative record to be adequate and does not find a factual dispute to require any factfinding that would duplicate the existing record.[26]

## III. CONCLUSION

In light of the preference for appellate review, the unambiguous statutory language of the Hobbs Act, and the absence of legislative history compelling a contrary conclusion, this Court holds that it lacks subject matter jurisdiction to resolve the issues in this case. Furthermore, appellate review is consistent with the legislative history and does not thwart the underlying purpose of the statute. This ruling avoids needless bifurcation of issues, serves the goals of economy and efficiency, and wisely uses judicial resources.

---

**25.** The Hobbs Act provision at issue is similar to the one in *Florida Power & Light*, 470 U.S. at 739, 105 S.Ct. at 1604. Section 2342 specifically references the subject matter of the Secretary's action and, because judicial review is tied to the subject matter rather than the procedural particulars, a formal hearing is not required. (D.I. 23 at 42.)

**26.** The plaintiff in *McNary* challenged the procedural due process afforded to his claim, a claim where the record and procedure is inadequate by definition. The plaintiff in the present case makes no such claim here. Unlike the consequences of the procedural deficiencies in *McNary*, the plaintiffs here can still able to obtain meaningful judicial review of the legal questions in disputes, as a practical matter, even if not allowed to pursue claim in district court.